**Elizabeth TAMEZ as Next Friend of Abram Joshua Tamez and Erica Roxanne Tamez, Minor Children, et al., Appellants,**

v.

**MACK TRUCKS, INC., Appellee.**

No. 13–00–00386–CV.

Court of Appeals of Texas, Corpus Christi–Edinburg.

Feb. 27, 2003.

Rehearing Overruled April 17, 2003.

John Blaise Gsanger, Edwards Law Firm, Michael G. Terry, Hartline, Dacus, Barger, Dreyer & Kern, Corpus Christi, David O. Gonzalez, Law Offices of Baldemar Gutierrez, Alice, for Appellant.

Charles B. Kirklin, Glen Boudreaux, Kirklin, Boudreaux & Leonard, Brock C. Akers, Phillips & Akers, Houston, Bruce D. Bain, Jerry Fazio, Dodge, Fazio, Anderson & Jones, Dallas, Baldemar Gutierrez, Alice, John Gonzales, John Gonzales & Assoc., Randy Howry, Sean E. Breen, Herman, Howry & Breen, Austin, William A. Abernathy, Meredith, Donnell & Abernathy, Corpus Christi, for Appellee.

Before Justices HINOJOSA, YAÑEZ, and DORSEY.[1]

## OPINION

Opinion by Justice HINOJOSA.

After excluding the expert witnesses of appellants, plaintiff[2] and intervenors[3] below, the trial court granted the motion for summary judgment of appellee, Mack Trucks, Inc. ("Mack Trucks"). We reverse the trial court's summary judgment order and remand the case to the trial court for further proceedings.

### A. BACKGROUND AND PROCEDURAL HISTORY

On October 19, 1996, Abram Tamez ("Tamez") was operating a tanker trailer hauling thousands of gallons of crude petroleum. The tractor was designed, manufactured and marketed by appellee Mack Trucks. The tractor and tanker were owned by Tamez's employer, Norco Crude Gathering, Inc. Tamez was delivering the

---

1. Retired Justice J. Bonner Dorsey, who concluded his term of office on December 31, 2002, continues to sit on this Court by assignment of the Chief Justice of the Texas Supreme Court pursuant to TEX. GOV'T CODE ANN. § 74.003 (Vernon 1998).

2. Appellant, Elizabeth Tamez as next friend of Abram Joshua Tamez and Erica Roxanne Tamez, minor children, was the plaintiff below. We will refer to this appellant as "Elizabeth Tamez."

3. Appellants, Elsa Guerrero, as next friend of Sara Beth Guerrero and Gregory Alan Guerrero, minor children, Donna Kim Cantu, and Terrie Zay, as next friend of Justin Scott Zay, a minor child, were intervenors below. We will refer to these appellants as the "Guerrero appellants."

 Appellant, Rosendo Tamez, Sr., individually and as administrator of the estate of Abram Tamez, deceased, also intervened below. We will refer to this appellant as "Rosendo Tamez."

crude petroleum to the Norco facility from a well site in rural Bee County.

At the time of the accident, Tamez was negotiating a curve in the road when his vehicle overturned. The vehicle subsequently burst into flames. Tamez was able to climb out of the cab; however, his body became engulfed in flames, and he suffered third-degree burns over ninety-six percent of his body. Tamez was air-lifted to Brooke Army Medical Center's burn-unit, where he died on October 30, 1996, as a result of his injuries.

Appellants sued Norco Crude Gathering, Inc., Glitsch Canada Limited, Snyder Tank Corp., Freuhoff Trailer Corp., and Mack Trucks for negligence, strict liability, breach of implied warranty, and misrepresentation. Appellants eventually nonsuited Freuhoff Trailer Corp. and settled with Norco Crude Gathering, Inc., Glitsch Canada Limited and Snyder Tank Corp., leaving Mack Trucks as the sole defendant.

Appellants alleged that a defect in the fuel system of the Mack truck in question was the producing cause of the fire which injured Tamez. Appellants' expert, Ronald Elwell, arrived at this conclusion after reviewing the evidence in the case. Mack Trucks subsequently moved to exclude Elwell's expert testimony because it was not scientifically reliable. Following the requisite *Daubert*[4] hearing, the trial court granted Mack Trucks' motion to exclude Elwell's testimony because his opinion was not sufficiently reliable. Appellants offered a bill of exception, clarifying their expert's testimony, and moved for recon-

sideration. The trial court denied the motion.

Mack Trucks then filed a supplemental[5] no-evidence motion for summary judgment, asserting there was no evidence of causation because Elwell's testimony had been excluded. Appellants offered the affidavits of another expert, Douglas Holmes, to defeat the no-evidence motion for summary judgment, but the trial court also struck Holmes's testimony. The trial court then granted the motion for summary judgment on unspecified grounds. The settled claims were later severed from the case, and a final order granting summary judgment was signed on June 23, 2000. This appeal ensued.

### B. ISSUES PRESENTED

In two issues, Elizabeth Tamez contends: (1) the trial court erred in granting Mack Trucks' motion for summary judgment because there is a genuine issue of material fact that the design defect at issue was the producing cause of Tamez's injuries and death; and (2) the trial court erred in excluding appellants' expert witnesses because these experts are highly qualified and their opinions are relevant and reliable.

In five issues, the Guerrero appellants contend the trial court erred in granting Mack Trucks' motion for summary judgment: (1) because (a) there is some evidence of a producing cause, (b) the trial court abused its discretion in excluding the testimony of Douglas Holmes, and (c) the trial court abused its discretion in excluding the testimony of Ronald Elwell; (2) on

---

4. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 585, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).

5. Mack Trucks originally moved for summary judgment on appellants' claims of misrepresentation, breach of warranty, non-design defect claims, the dismissal of the Guerrero chil-

dren's claims, and the dismissal of the claims of Donna Kim Cantu, Elizabeth Tamez, Elsa Guerrero and the estate. Prior to the entry of final judgment, Elizabeth Tamez and Elsa Guerrero dismissed their individual claims against Mack Trucks; thus, these individual claims are not before us on appeal.

their claims of negligence, manufacturing defect, and marketing defect by applying *Hyundai Motor Co. v. Rodriguez*, 995 S.W.2d 661 (Tex.1999); (3) on their claim of marketing defect because Tamez knew that his cargo was hazardous; (4) on the claims of Sarah Beth Guerrero and Gregory Alan Guerrero because they were not Tamez's natural children; and (5) on the claim of Donna Kim Cantu because she was not Tamez's child and that her claim was barred by limitations.

Elizabeth Tamez has incorporated, by reference, certain portions of the appellate brief of the Guerrero appellants. *See* TEX. R.APP. P. 9.7. Rosendo Tamez has incorporated and adopted the appellate briefs of Elizabeth Tamez and portions of the appellate briefs of the Guerrero appellants. *Id.* Consequently, Rosendo Tamez's claims will be included in our discussion of the issues presented by Elizabeth Tamez and the Guerrero appellants. Rosendo Tamez also contends the trial court erred in granting Mack Trucks' motion for summary judgment against the estate on the basis of limitations.

## C. EXCLUSION OF EXPERT TESTIMONY

In the second issue of Elizabeth Tamez and Rosendo Tamez and the second and third sub-issues of the Guerrero appellants' first issue, appellants contend the trial court abused its discretion by excluding their expert witnesses, Elwell and Holmes. Appellants assert these witnesses were qualified as experts and their opinions were relevant and reliable.

�no Texas Rule of Evidence 702 provides: "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or other-

wise." TEX.R. EVID. 702. To meet admissibility, the expert must be qualified, and the testimony must be relevant and be based on a reliable foundation. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 556 (Tex.1995). Whether the expert and the proffered testimony meet these requirements is a preliminary question for the trial court. *Id.; see also* TEX.R. EVID. 104(a). The trial court has broad discretion to determine admissibility of expert testimony and the appellate court should reverse only if there is an abuse of that discretion. *Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 499 (Tex.2001). The test for abuse of discretion is whether the trial court acted without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985). A reviewing court cannot conclude that a trial court abused its discretion simply because, in the same circumstances, it would have ruled differently, or if the trial court committed a mere error in judgment. *Robinson*, 923 S.W.2d at 558; *Loftin v. Martin*, 776 S.W.2d 145, 146 (Tex.1989). The party offering the expert's testimony bears the burden to prove that the witness is qualified under Rule 702. *Broders v. Heise*, 924 S.W.2d 148, 151 (Tex.1996); *Boren v. Bullen*, 972 S.W.2d 863, 865 (Tex.App.-Corpus Christi 1998, no pet.).

### 1. *Ronald Elwell*

Ronald Elwell attempted to testify as an expert in the field of post-collision fuel-fed fires. Elwell has a bachelor's degree in mechanical engineering. He worked for General Motors Corporation ("GM") for thirty years. During his employment, Elwell was GM's chief fire investigator on fuel tank systems in cars, trucks, buses and some stationary power plants. The types of trucks Elwell analyzed included heavy duty trucks like the tanker trailer

involved in the instant case. From 1971 to 1987, he was assigned to GM's engineering analysis group. One of the responsibilities of this group was to monitor and study the performance of GM vehicles in the hands of GM customers, specifically, GM vehicles involved in collisions which gave rise to products liability lawsuits. Elwell was one of the engineers responsible for fuel system analysis who assisted GM in defending post-collision fire litigation. Elwell spent sixteen years analyzing GM vehicles involved in post-collision fuel-fed fires. Elwell's duties at GM included: (1) consulting with design groups on fuel tank design; (2) testing competitors' products for fuel system security; (3) making presentations to management on issues impacting fuel system failures; and (4) evaluating outside experts in fuel design, fuel system design, fire causation analysis, accident reconstruction, and material performance. While at GM, Elwell investigated more than 300 post-collision fuel-fed fires. Since 1991, Elwell has been a self-employed consultant, conducting product integrity and accident reconstruction analysis, including fuel system component analysis and fire accident analysis.

In its motion to exclude, Mack Trucks did not challenge Elwell's testimony on the basis that he was unqualified to testify as an expert in post-collision fuel-fed fires. Mack Trucks only asserted that Elwell's opinions were not founded on scientifically reliable evidence.

■ When the reliability of an expert's testimony is challenged, the trial court must "evaluate the methods, analysis, and principles relied upon in reaching the opin-ion ... [in order to] ensure that the opinion comports with applicable professional standards outside the courtroom." *Gammill v. Jack Williams Chevrolet, Inc.*, 972 S.W.2d 713, 725–26 (Tex.1998); *Volkswagen of Am., Inc. v. Ramirez*, 79 S.W.3d 113, 123 (Tex.App.-Corpus Christi 2002, pet. filed). The trial court is not to determine whether the expert's conclusions are correct, but only whether the analysis used to reach those conclusions is reliable. *Gammill*, 972 S.W.2d at 728.

■ Where the proffered expert testimony is purely scientific, the Texas Supreme Court has used six nonexclusive factors to determine whether the testimony is reliable, and thus, admissible.[6] *Robinson*, 923 S.W.2d at 557. However, the court has recognized that these factors may not apply to non-scientific experts, who base their opinions on individual experience. *See Gammill*, 972 S.W.2d at 726. For those instances, the court has adopted the "analytical gap" analysis. *Id.* at 727. The expert's experience alone may provide a sufficient basis for his testimony; however, there still must be some basis for the opinion to show its reliability. *Id.* at 726. The trial court, as gatekeeper, must ultimately determine how to assess reliability. *Id.* In performing this role, the trial court "may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Id.*

■ After reviewing the record, we conclude that Elwell's opinion is largely based on the application of his knowledge, training, and experience to the underlying data

---

6. The *Robinson* factors include, but are not limited to: (1) the extent to which the theory has been or can be tested; (2) the extent to which the technique relies upon the subjective interpretation of the expert; (3) whether the theory has been subjected to peer review and/or publication; (4) the technique's poten-tial rate of error; (5) whether the underlying theory or technique has been generally accepted as valid by the relevant scientific community; and (6) the non-judicial uses which have been made of the theory or technique. *E.I. du Pont de Nemours & Co. v. Robinson*, 923 S.W.2d 549, 557 (Tex.1995).

in the case. While Elwell's analysis of the underlying artifacts in this case involves the application of scientific principles, it is not science. This methodology is not easily tested by objective criteria, such as identifiable scientific formulas. Thus, the *Robinson* factors for assessing the reliability of scientific testimony cannot be applied to Elwell's proffered testimony.

When experts rely upon individual experience and training to draw conclusions on the underlying data, then the reliability of such experts is not properly measured by the *Robinson* factor-based analysis. *Id.* at 727. Because we conclude that Elwell's testimony is not scientific in nature, we will apply the "analytical gap" test adopted in *Gammill*. *See id.* (citing *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997)). In *Gammill*, the court analyzed expert testimony by viewing how large an analytical gap existed between the expert's opinion and the underlying data in the case. *See id.* An impermissible analytical gap exists if an expert fails to demonstrate how his observations support his conclusions. *Id.*

In its order, the trial court found that Elwell's opinion testimony, that the Mack truck's fuel system was the cause of the fire that injured Tamez, was not sufficiently reliable and therefore, should not be admitted. We disagree. At the *Daubert* hearing and through bill of exception, Elwell properly identified the underlying facts he relied upon in arriving at his conclusion, explained the methodology he used, and showed how he applied his methodology to the underlying facts of the case to support his conclusion.

Elwell concluded that a defect in the truck's fuel system was the cause of the fire that injured Tamez. Elwell specifically identified the defect as the unreasonably dangerous placement of the truck's battery within three to five inches of the driver's-side fuel tank, coupled with inadequate fuel line connectors. Elwell opined that during the rollover, the truck's fuel tank and battery became displaced and the fire began when the released fuel came into contact with the extreme temperatures generated by the battery. In reaching this conclusion, Elwell relied upon the following underlying data sources: (1) witness statements and depositions; (2) the Department of Public Safety Accident Report; (3) a physical inspection of the accident scene; (4) photographs of the burned vehicle; and (5) an inspection of an exemplar vehicle.

At the heart of Elwell's opinion lies the principle of the fire triangle. The fire triangle principle defines the elements required for fire to exist—oxygen, fuel, and ignition source. This principle forms the basis for any theory concerning the origin of a post-collision fuel-fed fire. The first element is a given, because there is always oxygen present in the air. Thus, because a post-collision fuel-fed fire indicates a release of fuel, a post-collision fuel-fed fire is investigated with an eye toward the source of fuel and what it would have taken to ignite the fuel.

Elwell concludes that diesel fuel from the truck's fuel tanks was the source of fuel for the fire because of the short time interval between the rollover and when Tamez became engulfed in flames, together with the close proximity between the fuel tanks and a possible ignition source—the truck's battery. He says that the short time interval between the rollover and when Tamez became engulfed in flames is determinative of the fact that the fuel quickly found its ignition source. Although there were no eyewitnesses present at the start of the fire, Elwell points to the fact that Tamez received no crushing or debilitating injuries during the rollover and yet was still harmed, as being indica-

tive of the short amount of time Tamez had before becoming engulfed in flames. Elwell also relies upon the testimony of an eyewitness [7] who believed that Tamez had diesel fuel on him, to support his opinion.

According to Elwell, the likely cause of ignition was the high temperature generated by the battery, together with the battery's displacement during the rollover. Elwell based his opinion on his experience conducting or witnessing crash tests where battery components became displaced during testing. Elwell explained why it was important to identify and understand crush zones, so that they could be analyzed against the fire triangle. Elwell's analysis of photographs of Tamez's tractor and inspection of an exemplar vehicle produced by Norco Crude Gathering, Inc. showed the battery placement within inches of the fuel tanks. These observations showed all three elements of the fire triangle—air, the tractor's battery as a possible ignition source, and diesel fuel—to be present within three inches of each other on the tractor truck.

Elwell believed that at least one of the truck's side fuel tanks became displaced during the rollover and separated the balance line connecting the two fuel tanks. He points to photographic evidence indicating broken steel straps responsible for holding the fuel tanks in place as evidence of this fact. He also rules out tank rupture because there was nothing at the scene which could have ruptured the tank during the rollover, such as a wall, a tree, or another vehicle. Elwell further considered the connections between the truck's fuel tanks and balance line to be inadequate "garden-hose type fixtures." According to Elwell, these fixtures were drastically inadequate to sustain the crush

force generated from a rollover collision. Elwell concludes that during the rollover, the truck's fuel tank and battery became displaced and the fire began when the released fuel came into contact with the extreme temperatures generated by the battery.

However, in order to be considered reliable, this analysis must also discount other plausible sources of both fuel and ignition. If there are other plausible causes of the injury or condition that could be negated, the plaintiff must offer evidence excluding those causes with reasonable certainty. *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 720 (Tex.1997); *see also Vasquez v. Hyundai Motor Co.,* ——— S.W.3d ———, ———, No. 04–01–00554–CV, 2002 WL 1905203, at * 6, 2002 Tex.App. LEXIS 6025, at *16 (San Antonio Aug. 21, 2002, no pet.) (expert testimony is unreliable if it fails to rule out other plausible causes).

Here, Elwell discounted the tanker carrying the cargo of crude oil as the cause of the fire based on the time interval involved. He said that if the tanker had been the cause of the fire, Tamez would have been able to escape with little or no harm. Elwell based this statement on the following facts: (1) photographic evidence showing the physical separation between the Mack truck and the tanker; (2) the fact that Tamez received no crushing or debilitating injuries during the rollover; (3) Rex Harrell's testimony that he arrived on the scene approximately two minutes after he felt an explosion; and (4) the series of photographs showing the crude oil burning after the diesel fuel was consumed.

Unlike the expert in *Gammill*, Elwell provided a link between his observations

---

7. The eyewitness, Rex Harrell, was one of the first persons to arrive at the scene. Harrell testified that Tamez's body was covered with a "shiny, oily coating" which smelled of diesel fuel.

and his conclusions. In his examination of the underlying data in this case, Elwell used objective and relevant data in arriving at a conclusion regarding the cause of the fire that injured Tamez. We conclude that Elwell's testimony detailing his vast experience with post-collision fuel-fed fires, coupled with his testimony concerning his application of his knowledge and experience to the underlying data in the case, sufficiently demonstrate that the opinions he drew from the underlying data are reliable. *See Gammill,* 972 S.W.2d at 726. The trial court's function in this instance was not to determine if Elwell's conclusion was correct, but to determine whether his analysis, based on the evidence, was reliable. Accordingly, we hold the trial court abused its discretion in excluding Elwell's testimony as unreliable.

## 2. *Douglas Holmes*

■ After the trial court excluded the testimony of Ronald Elwell as a causation expert, appellants proffered the affidavit and supplemental affidavit of a second expert, Douglas Holmes, in response to Mack Trucks' no-evidence motion for summary judgment. In his supplemental affidavit, Holmes concluded that the cause of the fire was diesel fuel that escaped from the fuel tanks of the Mack truck Tamez was driving. Holmes opined the fuel was ignited by an electrical spark that originated from the truck's batteries, due to their close proximity to the fuel tanks. Holmes formed this opinion after reviewing the following: (1) photographs of the vehicle taken during and after the fire, (2) a videotape of the fire, (3) the police accident report, (4) photographs of the accident scene, (5) photographs of an exemplar vehicle, (6) witness statements and depositions of the first persons to arrive at the scene, (7) Tamez's death certificate, and (8) the affidavit of a witness describing what

appeared to be a battery cable fused to the truck.

According to Holmes, various photographs show that the supporting mounts for the truck's passenger-side fuel tank were displaced. This led him to conclude that the fuel tank became dislodged during the rollover. Holmes opined that this displacement subsequently separated the balance line, releasing diesel fuel. Holmes also relied on the affidavit of Gary Long, which showed there was evidence of a battery cable fused to another part of the truck. Based on this affidavit, Holmes concluded there was electrical current running through the battery cables. Holmes concluded that the most likely source of ignition was an electrical spark that originated from the batteries, due to their close proximity to the fuel tank. Holmes also discounted the possibility that the cargo was the source of the fire that caused injury to Tamez because of the separation between the driver's compartment and the tanker's hatch.

■ The trial court granted the motion to exclude Holmes on unspecified grounds. When a trial court does not specify the grounds on which it excludes testimony, we will affirm the trial court's ruling if any ground is meritorious. *K–Mart Corp. v. Honeycutt,* 24 S.W.3d 357, 360 (Tex.2000).

In its motion to exclude the testimony of Douglas Holmes, Mack Trucks challenged the reliability of the proffered testimony. Because we conclude that Holmes's testimony is non-scientific in nature, similar to that of Elwell's, we again apply the analytical gap test. *See Gammill,* 972 S.W.2d at 727.

The "analytical gap" in Holmes's testimony is his failure to set forth the basis for his opinion that the battery cable arced and was the ignition source of the fire, as opposed to the battery cable arcing as a result of the fire. Holmes states his con-

clusion, that an electrical arc ignited the fire, without describing the methodology used to arrive at his conclusion. Without the underlying methodology for his opinion, Holmes's proffered testimony is no more than his subjective belief or unsupported speculation. *See Robinson,* 923 S.W.2d at 557. Elwell, unlike Holmes, developed the analytical methodology he used as the basis for his conclusions through his testimony at the *Daubert* hearing and through a bill of exceptions. We conclude that Holmes's affidavits amount to little more than his subjective conclusions. The trial court was not required to admit opinion testimony connected to underlying data only by the *ipse dixit* of the expert. *See Gammill,* 972 S.W.2d at 727. Under these facts, the trial court could have concluded that there is simply too great an analytical gap between the data and the opinion proffered. *See id.* at 726–27. Accordingly, we cannot hold that the trial court abused its discretion in excluding Holmes's testimony.

We sustain that portion of the second issue of Elizabeth Tamez and Rosendo Tamez and the second and third sub-issues of the Guerrero appellants' first issue that relate to the expert testimony of Ronald Elwell. However, we overrule that portion of the second issue of Elizabeth Tamez and Rosendo Tamez and the second and third sub-issues of the Guerrero appellants' first issue that relate to the expert testimony of Douglas Holmes.

### D. SUMMARY JUDGMENT

Appellants contend the trial court erred in granting Mack Trucks' motion for summary judgment.

#### 1. *Standard of Review*

We review the granting of a traditional motion for summary judgment *de novo. See Natividad v. Alexsis, Inc.,* 875 S.W.2d

695, 699 (Tex.1994); *Tex. Commerce Bank-Rio Grande Valley, N.A. v. Correa,* 28 S.W.3d 723, 726 (Tex.App.-Corpus Christi 2000, pet. denied). In a traditional motion for summary judgment, the movant has the burden of showing that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Lear Siegler, Inc. v. Perez,* 819 S.W.2d 470, 471 (Tex.1991). In deciding whether there is a genuine issue of material fact, evidence favorable to the nonmovant will be taken as true, and all reasonable inferences made, and all doubts resolved, in his favor. *Am. Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 425 (Tex.1997). Summary judgment is proper if the movant disproves at least one element of each of the plaintiff's claims or affirmatively establishes each element of an affirmative defense to each claim. *Id.* The nonmovant has no burden to respond to a traditional motion for summary judgment, unless the movant conclusively establishes its cause of action or defense. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich,* 28 S.W.3d 22, 23 (Tex.2000).

By contrast, a no-evidence motion for summary judgment presented under Texas Rule of Civil Procedure 166a(i) is equivalent to a pretrial directed verdict, and this Court applies the same legal sufficiency standard on review. *Zapata v. The Children's Clinic,* 997 S.W.2d 745, 747 (Tex.App.-Corpus Christi 1999, pet. denied). This Court reviews the evidence in the light most favorable to the nonmovant, disregarding all contrary evidence and inferences. *KPMG Peat Marwick v. Harrison County Hous. Fin. Corp.,* 988 S.W.2d 746, 748 (Tex.1999); *Burroughs Wellcome Co. v. Crye,* 907 S.W.2d 497, 499 (Tex. 1995).

When a motion for summary judgment is presented asserting there is no evidence of one or more essential ele-

ments of a claim or defense on which the nonmovant would have the burden of proof at trial, the movant does not bear the burden of establishing each element of its own claim or defense. *In re Estate of Flores,* 76 S.W.3d 624, 629 (Tex.App.-Corpus Christi 2002, no pet.); *Lampasas v. Spring Ctr., Inc.,* 988 S.W.2d 428, 432–33 (Tex.App.-Houston [14th Dist.] 1999, no pet.); *see also* TEX.R. CIV. P. 166a(i). Instead, the burden shifts entirely to the nonmovant to present enough evidence to be entitled to a trial: evidence that raises a genuine fact issue on the challenged elements. *See* TEX.R. CIV. P. 166a cmt. If the nonmovant is unable to proffer enough evidence, the trial court must grant the motion. *Lampasas,* 988 S.W.2d at 433. A no-evidence summary judgment is improper if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. *Havner,* 953 S.W.2d at 711; *Zapata,* 997 S.W.2d at 747. Less than a scintilla of evidence exists when the evidence is so weak as to do no more than create a mere surmise or suspicion of a fact. *Kindred v. Con/Chem, Inc.,* 650 S.W.2d 61, 63 (Tex. 1983); *Zapata,* 997 S.W.2d at 747. More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Havner,* 953 S.W.2d at 711; *Transp. Ins. Co. v. Moriel,* 879 S.W.2d 10, 25 (Tex.1994).

When, as here, a trial court's order granting a motion for summary judgment does not specify the ground or grounds relied on for its ruling, the appellate court will affirm the summary judgment if any of the theories advanced are meritorious. *Dow Chem. Co. v. Francis,* 46 S.W.3d 237, 242 (Tex.2001); *Boren,* 972 S.W.2d at 865. Likewise, where the order granting the summary judgment does not state the grounds upon which it was grant-

ed, the nonmovant must show on appeal that each independent ground alleged is insufficient to support the summary judgment. *Malooly Bros., Inc. v. Napier,* 461 S.W.2d 119, 121 (Tex.1970); *Williams v. City of Dallas,* 53 S.W.3d 780, 784 (Tex. App.-Dallas 2001, no pet.).

## 2. *Analysis*

In its second amended motion for summary judgment and supplemental no-evidence motion for summary judgment, Mack Trucks asserted that: (1) it was entitled to a no-evidence summary judgment because appellants had not established that its truck design was the producing or proximate cause of the occurrence or Tamez's injuries; (2) it had established the affirmative defense of "open and obvious defect" as a matter of law and thus, appellants' claims for marketing defect were precluded; (3) appellants' claims for negligence, manufacturing defect, marketing defect, breach of implied warranty, and misrepresentation are precluded by the Texas Supreme Court case of *Hyundai Motor Co. v. Rodriguez,* 995 S.W.2d 661 (Tex. 1999); (4) the claim of Elsa Guerrero, as next friend of Sara Beth Guerrero and Gregory Alan Guerrero, minor children, should be dismissed because there is no evidence that Sara Beth Guerrero and Gregory Alan Guerrero are Tamez's children and thus, are not proper wrongful death beneficiaries; (5) Donna Kim Cantu's claim should be dismissed because she filed suit after the expiration of the two-year statute of limitations; and (6) the survival claim of Rosendo Tamez, as administrator of the estate of Abram Tamez, deceased, should be dismissed because there was no administration of the estate within one year and the two-year statute of limitations bars the estate from recovery.

### a. *Causation*

■ In their first issue, Elizabeth Tamez and Rosendo Tamez contend the trial court erred in granting Mack Trucks' motion for summary judgment because there is a genuine issue of material fact that the design defect at issue was the producing cause of Tamez's injuries and death. In the first sub-issue of their first issue, the Guerrero appellants contend the trial court erred in granting Mack Trucks' motion for summary judgment because there is some evidence of a producing cause.

Because we have concluded that the trial court should not have excluded the expert testimony of Ronald Elwell, we will now determine whether there is more than a scintilla of evidence on causation to preclude summary judgment.

Mack Trucks moved for a no-evidence summary judgment on the ground that appellants had failed to establish that its truck design was the producing or proximate cause of the occurrence or injuries. In response, appellants produced the deposition, report and affidavit of Ronald Elwell, as well as Elwell's testimony at the *Daubert* hearing and through bill of exceptions. As we discussed above, this summary judgment evidence sets out the possible defects in the fuel system of the Mack truck driven by Tamez and details how these defects were a producing cause of the fire that injured Tamez.

■ Although contrary theories are espoused by Mack Trucks' experts, in reviewing a no-evidence summary judgment, we must construe the record in the light most favorable to the nonmovant and disregard all contrary evidence and inferences. *KPMG Peat Marwick*, 988 S.W.2d at 748. After applying this standard, we conclude there is more than a scintilla of evidence to support appellants' claims that a defect in the fuel system of the truck in question was a producing cause of the fire

that injured Tamez. Therefore, we hold the trial court erred in granting summary judgment on this ground. We sustain the first issue of Elizabeth Tamez and Rosendo Tamez and the first sub-issue of the Guerrero appellants' first issue.

### b. *Open and Obvious Defect*

■ In their third issue, the Guerrero appellants, and by reference Elizabeth Tamez and Rosendo Tamez, contend the trial court erred in granting Mack Trucks' motion for summary judgment on their marketing defect claim because Tamez knew his cargo was hazardous.

Mack Trucks moved for summary judgment on the ground that it had established the affirmative defense of "open and obvious defect" as a matter of law and thus, appellants' claim for marketing defect was precluded. Mack Trucks produced summary judgment evidence establishing that Tamez was certified to transport hazardous materials, and thus, had a special knowledge of the dangerous propensity of his cargo. It asserted that the dangers of a rollover accident involving a tanker trailer filled with highly flammable crude oil are open and obvious. Relying on *Caterpillar, Inc. v. Shears*, Mack Trucks argued that it had no duty to warn in this case because such a duty applies only to hazards unknown to the consumer. *See Caterpillar, Inc. v. Shears*, 911 S.W.2d 379, 382 (Tex.1995).

While Mack Trucks correctly states the proposition derived from *Caterpillar*, it misapplies the proposition to the facts of this case. The law of products liability imposes liability only for products sold "in a defective condition unreasonably dangerous to the user or consumer." *Id.* (quoting RESTATEMENT (SECOND) OF TORTS § 402A(1) (1965)). Here, the "product" is the tractor truck, which was designed, manufactured,

and marketed by Mack Trucks. The alleged defect involves the truck's fuel system. While we agree that Mack Trucks has no duty to warn of potential dangers associated with the tanker, it has failed to produce any summary judgment evidence showing that any dangers associated with the truck's fuel system were common knowledge or known by Tamez.

Accordingly, we conclude the trial court erred if it granted summary judgment on this ground.

### c. Preclusion of Claims

In their second issue, the Guerrero appellants, and by reference Elizabeth Tamez and Rosendo Tamez, contend the trial court erred in granting Mack Trucks' motion for summary judgment on their claims for negligence, manufacturing defect, and marketing defect because the court misapplied the Texas Supreme Court case of *Hyundai Motor Co. v. Rodriguez.*

Mack Trucks moved for summary judgment on the ground that *Hyundai Motor Co.* precludes appellants from recovering for negligence, manufacturing defect, marketing defect, breach of implied warranty, and misrepresentation. Mack Trucks argued that because these claims all stem from a single complaint, *i.e.*, that the design of the truck's fuel system was a producing cause of Tamez's injury, the trial court should not confuse the jury by submitting differently worded questions that call for the same factual finding.

In the *Hyundai Motor Co.* case, the plaintiff, Rodriguez, was severely injured in a rollover accident involving a Hyundai Excel. *Hyundai Motor Co.,* 995 S.W.2d at 662. Rodriguez sued Hyundai Motor Co. and others for negligence, design defect, marketing defect, and breach of implied warranty. *Id.* She alleged that the Excel was not crash worthy because its roof structure and passenger restraint system

were so defectively designed that she was thrown into the roof in the accident and injured more severely than she would have been otherwise. *Id.* The trial court submitted two jury questions on liability—one on negligence and the other on design defect. *Id.* at 662–63. The jury answered each question negatively. *Id.* The court of appeals reversed, holding that the trial court had erred by refusing to submit a jury question on breach of implied warranty. *Id.* at 663. The supreme court, in reversing the court of appeals, held that when the controlling issues regarding claims for breach of an implied warranty and strict liability are functionally identical, the trial court is not required to submit differently worded jury questions that call for the same factual finding. *Id.* at 665–66.

Here, as in the *Hyundai Motor Co.* case, all legal theories asserted are predicated on the same complaint, *i.e.*, that the alleged design defect in the fuel system of the Mack truck driven by Tamez was the proximate or producing cause of the fire that injured him. Likewise, both cases involve the crash worthiness of their respective vehicles. However, unlike the *Hyundai Motor Co.* case, this case was disposed of by summary judgment rather than a trial on the merits.

Whether a plaintiff is precluded from bringing multiple theories of recovery at the pre-trial stage is an altogether different issue than was before the supreme court in *Hyundai Motor Co.* Here, Mack Trucks, as the summary judgment movant, was required to bring forth evidence disproving at least one element of each of the plaintiffs' claims or affirmatively establishing each element of an affirmative defense to each claim. *Grinnell,* 951 S.W.2d at 425. Mack Trucks cannot rely upon *Hyundai Motor Co.* to accomplish this result.

Accordingly, we conclude the trial court erred if it granted summary judgment on this ground.

#### d. *The Guerrero Children*

■ In her fourth issue, Elsa Guerrero contends the trial court erred in granting Mack Trucks' motion for summary judgment on her claim as next friend of Sara Beth Guerrero and Gregory Alan Guerrero, minor children.

In its motion for summary judgment, Mack Trucks asserted Elsa Guerrero's claim should be dismissed because there is no evidence that Sarah Beth Guerrero and Gregory Alan Guerrero are Tamez's natural children and thus, not proper wrongful death beneficiaries. While the motion contains no-evidence language, we construe the motion as a traditional motion for summary judgment. *See Creative Thinking Sources, Inc. v. Creative Thinking, Inc.*, 74 S.W.3d 504, 514 (Tex.App.-Corpus Christi 2002, no pet.); *Michael v. Dyke*, 41 S.W.3d 746, 752 (Tex.App.-Corpus Christi 2001, no pet.). In support of the motion, Mack Trucks presented summary judgment evidence establishing that: (1) Elsa Guerrero, the mother of Sarah Beth Guerrero and Gregory Alan Guerrero, was not married to Tamez; (2) the children were not listed in Tamez's obituary as his children; (3) the children were not listed as dependents on Tamez's employment application; (4) Tamez was not listed as the father on the children's birth certificates; and (5) neither child took the surname "Tamez."

It is undisputed that Elsa Guerrero was not married to Tamez when Sarah Beth and Gregory Alan were born. Therefore, the children must establish by clear and convincing evidence that Tamez was their father. *Garza v. Maverick Market, Inc.*, 768 S.W.2d 273, 275–76 (Tex.1989) (If paternity is questioned in wrongful death action, alleged child must prove by clear and convincing evidence that he is filial descendant of deceased.). As to what evidence is clear and convincing, the Texas Supreme Court has held that "a fact finder must decide that question in each case." *Id.* at 276.

In the instant case, Mack Trucks' summary judgment evidence does not conclusively establish that the Guerrero children were not the natural children of Tamez. The fact that the children were born out of wedlock, does not, in itself, establish that Tamez was not their father. *See id.* The fact that the children were not listed on Tamez's employment application or insurance benefits enrollment form does not establish, as a matter of law, that they were not his natural children. No father was identified on the children's birth certificates pursuant to Medicaid regulations.

On the other hand, Elsa Guerrero offered as summary judgment evidence, a court order establishing the parent-child relationship between Sarah Beth and Tamez. The summary judgment evidence also included Elsa Guerrero's deposition testimony that Tamez was the father of both children and evidence of Gregory Alan's conception and gestation. This type of evidence has been recognized as proper by the Texas Supreme Court. *See id.* Because there is some evidence of paternity offered in a suit under the Wrongful Death Act, a child born out of wedlock is entitled to an opportunity to argue to the trier of fact that he is the child of the alleged father. *Id.*

We hold that an issue of fact exists regarding whether Sarah Beth Guerrero and Gregory Alan Guerrero are Tamez's natural children. Accordingly, we conclude the trial court erred if it granted summary judgment on this ground.

#### e. *Claims of Donna Kim Cantu*

In her fifth issue, Donna Kim Cantu contends the trial court erred in granting

Mack Trucks' motion for summary judgment on her claim.

In its second amended motion for summary judgment, Mack Trucks asserted: (1) the summary judgment evidence established that Donna Kim Cantu was not Tamez's child, and (2) Donna Kim Cantu's claims should be dismissed because she filed suit after the expiration of the two-year statute of limitations.

In support of the motion, Mack Trucks presented summary judgment evidence establishing that: (1) Tamez was not married to Cantu's mother; (2) Cantu was not listed in Tamez's obituary as his child; (3) Cantu was not listed as a dependent on Tamez's employment application; and (4) Cantu did not use the surname "Tamez."

■ As we discussed above, such evidence is insufficient to establish that, as a matter of law, Donna Kim Cantu is not Tamez's child. An illegitimate child must be given an opportunity to argue to the trier of fact that she is the child of the alleged father. *Id.* Accordingly, we conclude that an issue of fact exists regarding whether Donna Kim Cantu is Tamez's child.

■ When a defendant moves for summary judgment on the affirmative defense of limitations, it must conclusively prove each element of the defense. *Velsicol Chem. Corp. v. Winograd,* 956 S.W.2d 529, 530 (Tex.1997). A party moving for summary judgment on limitations grounds must conclusively prove when the cause of action accrued. *Holy Cross Church of God in Christ v. Wolf,* 44 S.W.3d 562, 566 (Tex. 2001). Section 16.003(b) of the Texas Civil Practice and Remedies Code provides a two-year limitations period for wrongful death claims, beginning on the date of death. TEX. CIV. PRAC. & REM.CODE ANN. § 16.003(b) (Vernon 2002).

Here, it is undisputed that Donna Kim Cantu intervened in the case more than two years after Tamez's death. However, Cantu claims that suit was filed on her behalf as a statutory beneficiary, pursuant to civil practice and remedies code section 71.004.

For wrongful death, the persons who may bring an action are the surviving spouse, children, and parents of the deceased. TEX. CIV. PRAC. & REM.CODE ANN. § 71.004(a) (Vernon 1997); *Villegas v. Griffin Indus.,* 975 S.W.2d 745, 749 (Tex. App.-Corpus Christi 1998, pet. denied). One or more of these individuals may bring the action for the benefit of all. TEX. CIV. PRAC. & REM.CODE ANN. § 71.004(b) (Vernon 1997); *Trigo v. Munoz,* 993 S.W.2d 419, 422 (Tex.App.-Corpus Christi 1999, pet. denied). Where suit is brought by only one, or some but not all, of the parties, it must appear that the suit was brought for the benefit of all. *Avila v. St. Luke's Lutheran Hosp.,* 948 S.W.2d 841, 850 (Tex.App.-San Antonio 1997, pet. denied). This provision was enacted chiefly for the benefit of the defendant in such a suit, to protect it against the bringing of several suits arising out of the same transaction. *Id.*

It is undisputed that Mack Trucks knew of Cantu's existence during the pendency of the lawsuit. The depositions of Elsa Guerrero, Dora Tamez, Rosendo Tamez, and Elizabeth Tamez all refer to Cantu as Tamez's daughter. Written discovery listing all the children of Tamez also included Cantu.

With knowledge of Cantu's existence, Mack Trucks filed a motion to dismiss, objecting to the non-joinder of Cantu. Within its motion to dismiss, Mack Trucks acknowledged that the Tamez plaintiffs had filed the suit on behalf of all statutory beneficiaries.

Cantu is simply intervening in a case that was already filed on her behalf by the other statutory beneficiaries. We see no reason why she should not be able to accomplish the same result by intervening in the wrongful death action, even after limitations has run, as would be accomplished through amendment of the Tamez plaintiffs' pleadings. *See Franks v. Sematech, Inc.,* 936 S.W.2d 959, 960–61 (Tex. 1997); *see also* TEX. CIV. PRAC. & REM.CODE ANN. § 16.068 (Vernon 1997). On these facts, we conclude the filing of Cantu's petition in intervention related back to the filing of the Tamez plaintiffs' original petition. *See e.g., Bradley v. Burnett,* 687 S.W.2d 53, 55 (Tex.App.-Dallas 1985, no writ) (amending survival suit to include wrongful death cause of action relates back to the date the survivors' suit was filed for purposes of computing limitations, where both actions arose out of the same transaction or occurrence).

Accordingly, we conclude the trial court erred if it granted summary judgment on these grounds. We sustain the second, third, fourth, and fifth issues of the Guerrero appellants and the referenced issues of Elizabeth Tamez and Rosendo Tamez.

### f. *Survival Claim of the Estate*

 Rosendo Tamez contends the trial court erred in granting Mack Trucks' motion for summary judgment on the survival claim of the estate of Abram Tamez, deceased, on the issue of limitations. In its motion for summary judgment, Mack Trucks asserted that the survival claim of Rosendo Tamez as administrator of the estate of Abram Tamez, deceased, should be dismissed because there was no administration of the estate within one year and the two-year statute of limitations bars the estate from recovery.

Rosendo Tamez filed suit as administrator of Tamez's estate within three years of Tamez's death. Texas Civil Practice and Remedies Code section 16.062(a) tolls any applicable statute of limitations for twelve months after the death of a person against whom or in whose favor there may be a cause of action. TEX. CIV. PRAC. & REM.CODE ANN. § 16.062(a) (Vernon 1997); *Felan v. Ramos,* 857 S.W.2d 113, 118 (Tex.App.-Corpus Christi 1993, writ denied). If an executor or administrator of an estate qualifies before the expiration of this tolling period, the statute of limitations begins to run at the time of the qualification. TEX. CIV. PRAC. & REM.CODE ANN. § 16.062(b) (Vernon 1997).

Although the twelve-month tolling period may be shortened by the qualification of an executor or administrator, in this case, none qualified during such a period. Therefore, limitations commenced on October 30, 1997, twelve months after Tamez's death. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 16.062(a) (Vernon 1997). Because Rosendo Tamez filed suit as administrator of Tamez's estate within two years after October 30, 1997, we conclude the action was timely filed. *See, e.g., Garcia v. Caremark, Inc.,* 921 S.W.2d 417, 420–21 (Tex. App.-Corpus Christi 1996, no writ) (applying tolling provision of section 16.062 to estate's survival claim).

Accordingly, we conclude the trial court erred if it granted summary judgment against Tamez's estate on the issue of limitations. We sustain Rosendo Tamez's limitations issue.

### 3. *Conclusion*

We have concluded that the trial court erred if it granted summary judgment on any of the grounds raised by Mack Trucks in its traditional motion for summary judgment. As to Mack Truck's no-evidence motion for summary judgment, we find

that appellants produced sufficient evidence raising a genuine issue of material fact on all the challenged elements. Accordingly, we hold the trial court erred in granting Mack Trucks' motion for summary judgment.

### E. Disposition

We reverse the trial court's order granting summary judgment and remand the case to the trial court for further proceedings consistent with this opinion.