NUMBER 13-02-00385-CV





COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG






FORMOSA PLASTICS CORP., USA, Appellant,


v.



KAJIMA INTERNATIONAL, INC., Appellee.





On Appeal from the 135th District Court


of Calhoun County, Texas.






CONCURRING OPINION ON MOTION FOR REHEARING



Before the Court En Banc


 Concurring Opinion by Justice Castillo


 The majority concludes that the trial court abused its discretion in refusing to
disqualify Hutchison as an expert witness for Kajima. For the same reasons espoused
on original submission, I respectfully concur with the result. 


I. HISTORY OF THE CASE


 This is a suit for fraud tried to a jury after appeal and remand. In January 1993,
Kajima International, Inc. ("Kajima"), an international industrial construction firm, sued
Formosa Plastics Corporation, USA and Formosa Plastics Corporation, Texas
("Formosa"), a petrochemical company with operations in Point Comfort, Calhoun
County, Texas. Kajima sought damages for fraud, breach of contract, quantum meruit,
and negligent misrepresentation arising out of five contracts for work performed by
Kajima in expanding Formosa's Point Comfort facility. (1) 

 After two mistrials, the case went to jury verdict in 1997. The trial court
entered judgment notwithstanding the jury's findings in Kajima's favor on some but
not all of Kajima's theories of recovery. Kajima appealed the resulting judgment for
$5,591,066.65, complaining that the trial court erroneously refused to submit a broad-form fraud question. This Court held that the trial court abused its discretion in
submitting a fraud question that precluded the jury's consideration of "string-along"
fraud that occurred after execution of the written contracts. Kajima Int'l, Inc. v.
Formosa Plastics Corp., 15 S.W.3d 289, 294 (Tex. App.-Corpus Christi 2000, pet.
denied) ("Kajima I "). We reversed and remanded for a new trial. Id. at 294. 

 After remand, Kajima moved for a partial summary judgment that Formosa USA
and Formosa Texas comprised a single business enterprise. The trial court agreed. 
Kajima nonsuited Formosa Texas. It also nonsuited all of its claims against Formosa
USA except fraud. 

 Before and during both the retrial in 2002 and the 1997 trial, Formosa
unsuccessfully sought to strike Kajima's expert witness, claiming that the witness's
opinions were unreliable and that he had "switched sides" during the litigation. At the
2002 trial, the expert testified, over Formosa's objection, that Kajima expended
$38,717,854.00 in total costs in completing the project. He also testified Kajima
expended $3,330,547.00 in costs that added no value to the project. The parties did
not dispute that Formosa paid Kajima approximately $10,000,000.00 on the project. 
Kajima's expert concluded that Kajima's out-of-pocket damages equaled
$25,387,380.00. 

 At the conclusion of the evidence, the trial court submitted a single broad-form
fraud question to the jury. It refused Formosa's request for a fraud question that
asked for separate findings as to each contract. It also refused Formosa's requested
mitigation instruction and ratification question. 

 Before the 1997 trial, the parties had entered into a rule 11 agreement regarding
the admissibility of thousands of pages of documents. See Tex. R. Civ. P. 11. After
remand, the parties agreed that their rule 11 agreement regarding the admissibility of
each party's trial exhibits applied to the second trial. During deliberations at the
second trial, the jury requested all trial exhibits. Kajima objected to providing post-contract technical drawings to the jury on the grounds that they were irrelevant,
misleading, and not in evidence. Formosa responded that the documents were
admitted in accordance with the parties' rule 11 agreement. The trial court sustained
Kajima's objections as to all post-contract drawings. 

 After deliberating, the jury answered the broad-form fraud question in Kajima's
favor. It assessed Kajima's damages at $15,432,123.45. The resulting judgment
against Formosa, filed April 12, 2002, awarded Kajima $15,432,123.45 in actual
fraud damages, $403,156.86 in costs, and $14,210,269.65 in prejudgment interest
at the rate of ten percent per annum, for a total judgment of $29,642,393.10. The
judgment also awarded postjudgment interest at the rate of ten percent. In post-judgment motions, Formosa sought an adjustment of the prejudgment interest awarded
in the judgment to reflect settlement credits. The trial court refused. 

 This appeal ensued. Formosa presents nine issues. The majority sustains the
third issue, reverses and remands. For the reasons stated below, I would affirm the 
judgment.

II. DISPOSITION


A. The Evidentiary Issues


 In the second part of issue three, Formosa asserts that the trial court abused its
discretion in denying its challenge to Kajima's expert, arguing that the expert's
methodology was unreliable. In the first part of issue three, Formosa also claims that
the trial court should have struck the expert because of a disqualifying "side-switching" conflict of interest. In issue five, Formosa challenges the trial court's
exclusion of evidence that Kajima caused a portion of its own damages by
underbidding the contracts and other "self-inflicted" losses. 

1. The Expert Witness Challenges


a. Reliability


 Formosa asserts that the opinions of Kajima's expert witness, A. W.
"Chip" Hutchison, are unreliable. Relying on Robinson and its progeny, Formosa
contends that Hutchison's method of formulating his opinions, to which the expert
referred as the "Hutchison Method," is idiosyncratic and not accepted within
the construction industry. See E.I. du Pont de Nemours & Co. v. Robinson,
923 S.W.2d 549, 554 (Tex. 1995). Kajima acknowledges that the expert used the
term "Hutchison Method" in promotional materials to describe his methodology. 
However, Kajima argues, Hutchison did not testify in the 2002 trial about delay
causation, which is the area of expertise to which Formosa directs its argument, but
only about the value of the work Kajima performed for Formosa. Kajima notes that
Formosa fully cross-examined Hutchison and challenged his damages calculations. In
any event, Kajima contends, Formosa did not challenge Hutchison's qualifications,
based on his education and extensive experience in the construction industry, to render
an opinion about the value of the work performed by Kajima. By not raising the issue
in the trial court, Kajima concludes, Formosa waived its challenge on appeal to the
reliability of Hutchison's opinions regarding Kajima's damages. I note that on appeal,
Formosa does not challenge Hutchison's credentials or expertise or otherwise assert
that Hutchison was unqualified or that his opinions were not relevant. Rather,
Formosa asserts that Hutchison's opinions were not based on a reliable foundation. 

(1) Standard of Review and Burden of Proof


 Rule 702 of the Texas Rules of Evidence governs the admissibility of expert
testimony. See Tex. R. Evid. 702; Robinson, 923 S.W.2d at 554. Rule 702 provides: 
"if scientific, technical, or other specialized knowledge will assist the trier of fact to
understand the evidence or to determine a fact in issue, a witness qualified as an
expert by knowledge, skill, experience, training, or education may testify thereto in the
form of an opinion or otherwise." Tex. R. Evid. 702; Tamez v. Mack Trucks, Inc.,
100 S.W.3d 549, 554 (Tex. App.-Corpus Christi 2003, pet. granted). The expert
must be qualified to render the proffered opinions. Id. at 556. The testimony also
must be relevant and based on a reliable foundation. Id. Once the opposing party
objects to proffered expert testimony, the proponent of the witness's testimony bears
the burden of demonstrating its admissibility. Id. at 557. 

 To meet this burden, the proponent must demonstrate that: (1) the expert is
qualified; and (2) the expert's testimony is relevant and reliable. See Robinson,
923 S.W.2d at 556. These are threshold issues the trial court determines under
rule 104(a) before admitting the testimony. See Tex. R. Evid. 104(a); Robinson,
923 S.W.2d at 556. In this regard, the trial court acts as a "gatekeeper." Gammill
v. Jack Williams Chevrolet, Inc., 972 S.W.2d 713, 726 (Tex. 1998). We review a
trial court's preliminary determination of the admissibility of expert witness testimony
under an abuse-of-discretion standard. Guadalupe-Blanco River Auth. v. Kraft,
77 S.W.3d 805, 807 (Tex. 2002); Tamez, 100 S.W.3d at 554. 

(2) Reliability Scope of Review


 I note that Formosa objected to the reliability of Hutchison's opinions before,
during, and after both the 1997 and the 2002 trials. The record before us consists of
Hutchison's 1997 affidavit as well as testimony in multiple proceedings, including both
trials. (2) The trial court took judicial notice of the prior proceedings, including a
Robinson hearing, during the 2002 trial. This Court has not had occasion to determine
the scope of our review in examining a trial court's exercise of discretion in performing
its gatekeeping function with regard to expert testimony. Two of our sister courts of
appeals have concluded that an appellate court examines the record as a whole when
reviewing the trial court's preliminary admissibility determinations under rule 104(a). 
In re J.B., 93 S.W.3d 609, 619-20 (Tex. App.-Waco 2002, pet. denied); accord State
Farm Fire & Cas. Co. v. Rodriguez, 88 S.W.3d 313, 320 (Tex. App.-San Antonio
2002, pet. denied) ("The record as a whole shows that [the expert's] opinions are
grounded in scientific method and procedure and amount to more than subjective belief
or unsupported speculation."). On this record, in light of the multiple proceedings in
which Hutchison's testimony was both offered and cross-examined, I would hold that
the scope of our review of the reliability of his opinions encompasses the complete
record. See In re J.B., 93 S.W.3d at 619-20; see also State Farm Fire & Cas. Co.,
88 S.W.3d at 320. 

(3) Reliability Analysis


 In his affidavit, Hutchison stated: "In the Kajima/Formosa litigation, my firm has
spent the past three years analyzing approximately one million pages of project-related
records." He explained his methodology: 

 The methodology that is generally accepted as the most appropriate
approach to use to evaluate an industrial project is called the "as-released" method. This methodology has been subject to peer review
and scrutiny for many years. For the past 17 years, my area of
specialization has been the analysis of industrial construction jobs and the
quantification of damages that involve delays, acceleration, disruption
and productivity losses. The "as-released" approach is widely used for
both litigation and non-litigation construction management purposes. 
Courts have reviewed the methodology applied in this case, and have
found that it was both logical and reasonably calculated to reflect the
extent of delays and causation for such delays. . . . The general
approach that I used in analyzing the delay, related acceleration and extra
work on all five jobs at issue in this is the "as-released" method. . . . The
approach which we have used to evaluate this case has been used
countless times in analyzing industrial projects. It has been used outside
the litigation context on a number of occasions, including (1) University
of North Carolina Cogeneration Facility in Chapel Hill, (2) Vetrotex
Certainteed plant in Wichita Falls, Texas, (3) Westinghouse Saraville
facility in Saraville, New Jersey, (4) Dallas Civil Center, and (5) Fort
Worth Sewage Treatment facility. The approach I described above is
utilized in management of projects as well as analysis of claims after the
projects have been completed. This approach is the only effective
method used in analyzing complex industrial projects by engineers and
consultants who specialize in that endeavor.


 At one Robinson hearing, Hutchison testified the "as-released" method "is
something that's about, I would say, 20 years old, 17 years old. It has been around
a long time and is new in relation to construction but not new in terms of its use in
forecasting and in evaluating project delay and work restriction." After developing
Hutchison's qualifications through education and extensive experience in the
construction industry (which Formosa has not challenged), Kajima established
Hutchison's expertise with regard to evaluating construction delays: 

 Q. Okay. Now, your company does construction management and
analysis of delays and what causes delays on large industrial
projects? 


 A. Yes, sir. 


 Q. Okay. As part of what you do, do you determine why delays
occur? 


 A. Yes, sir. 


 Q. That's what people hire you to do? 


 A. It is. 


 Q. And are you hired usually to determine who or what causes the
delays? 


 A. I am. 


 Q. Do you determine how much those delays cost? 


 A. I do, yes, sir. 


 Q. And what is the process of determining how much the delays
cost? What's the method that you go through to determine that?


 A. Quantification of damages, which is what I call what it costs,
which is to go into the project records and to look at how the
money was expended and to study the crude composition of the
job and to see how crews were used and to see what conditions
this labor was subjected is part and parcel of evaluating why
projects cost more than they are planned to cost. 


 The first step in any analysis is to find out what is the
estimate, what should it cost, what is the - what is the normal
cost to accomplish this work. 


 The next is to identify what are the additional tasks. In
some cases, it is a very easy, discrete exercise of simply looking
at extra work, such as the double jointing of pipe on this project. 
In other cases, it has to do with phenomenon associated with
overcrowding or overtime or congestion or dilution of supervision,
all concepts which have been around in construction for years and
years and years and have been evaluated by our firm for the past
17 years but have been evaluated by many different experts and
authorities over that time. 


 Q. How many years have you personally spent analyzing causes of
delays and quantification of the cost of those delays on large
industrial projects like the Formosa job? 


 A. For the past 17 years. 


 Q. That's what you do for a living? 


 A. That's what I do for a living. 


 However, at the 2002 trial, as Kajima points out, the basis for Hutchison's
opinions consisted of Formosa's documents, including internal memoranda, not the
expert's "as-released" methodology. Hutchison testified:

 Q. Mr. Hutchison, to keep in perspective what's at issue in this case,
one of the questions that the jury's going to be asked . . . is did
Formosa commit fraud against Kajima? 


 A. Yes, sir. 


 Q. Now, one of the things that we're going to want to be looking at
and I think it's agreed that it's important is what did Formosa
know before Kajima signed its contracts. And have you seen any
evidence in this record that Formosa knew that these drawing
problems existed and that Kajima would have the very types of
problems that it had on this job and that they knew that before
Kajima signed its contract? 


 A. Yes, sir, I have. And that's really the unbelievable part of this, is
that Formosa knew it and they still let this job go forward. 


 Q. Now, do you base that on the Formosa internal memos that you've
seen that were written before Kajima signed its contract? 


 A. Yes, sir. 


 Hutchison's 2002 trial testimony shows that Hutchison did not testify to any
opinion regarding application of the "as-released" methodology in determining
causation for the construction delays alleged by Kajima to have been caused by
Formosa. In arguments to the trial court, Formosa acknowledged that Hutchison did
not discuss "the 'as built' or the Hutchison Method that he made so much of at the
last trial having anything to do with fraud damages." Rather, Hutchison arrived at his
opinions by applying his knowledge, skill, experience, training, and education to his
review of relevant construction documents. He then testified to a summary of his
review of the documents as the basis for his opinions. See Tex. R. Evid. 1006. I
conclude that Hutchison's opinions regarding Formosa's culpability for fraud and the
value of Kajima's work on the project were based on his education and extensive
experience in the construction industry, not on the "as-released" methodology
challenged by Formosa in this appeal. Accordingly, I do not find any "analytical gap"
between Hutchison's testimony and the basis for his opinions, nor do I find his
opinions to be "subjective belief or unsupported speculation." See Gammill,
972 S.W.2d at 726. I would hold that the trial court did not abuse its discretion in
determining that Hutchison's testimony met the threshold reliability requirements of
rule 702. See Tex. R. Evid. 702. I would overrule the second part of Formosa's third
issue. 

b. Conflict of Interest


(1) The "Side-Switching" Issue


 Formosa's attempt to disqualify Kajima's expert witness because of "side-switching" presents an issue of first impression in Texas. The parties agree that
Kajima retained Hutchison as an expert witness. Hutchison was associated with Steve
Huyghe, an expert witness initially consulted by Formosa. Formosa asserts that: (1) it
disclosed confidential information to Huyghe; (2) Huyghe actually disclosed those
confidences to Hutchison; or (3) Huyghe is presumed conclusively to have disclosed
Formosa's confidences to Hutchison because of their association. 

 Kajima responds that: (1) Kajima did not retain Huyghe, who was an employee
of a corporation that is a separate entity from the corporation that employed
Hutchison, and Formosa did not retain Hutchison; (2) Formosa did not disclose any
confidential information to Huyghe; (3) even if Formosa did disclose confidential
information to Huyghe, knowledge of that information cannot be imputed to Kajima's
testifying expert merely because Huyghe was employed by a corporation controlled by
Hutchison; (4) even if Formosa disclosed confidential information to Huyghe, the
information was subject to discovery because Formosa's own testifying expert witness
reviewed Huyghe's work product; and (5) Formosa did not formally retain Huyghe and
did not sign a retention agreement provided by Huyghe that included a confidentiality
and non-disclosure clause, thus waiving any claim now that the information it provided
to Huyghe was confidential. 

 Formosa counters that: (1) Hutchison controlled both A. W. Hutchison &
Associates of California, Inc. ("AWH-C"), which was the California corporation that
employed Huyghe, and A. W. Hutchison & Associates, Inc. ("AWH"), which was the
Georgia corporation that employed Hutchison; and (2) the two corporations merged
prior to trial. I turn first to determining the standard and scope of review applicable
to this analysis. 

(2) Expert Disqualification Standard and Scope of Review


 No Texas court has set out the legal standards by which we must analyze
Formosa's motion to strike Kajima's expert for a disqualifying conflict of interest. As
noted above, the abuse-of-discretion standard applies to appellate review of the trial
court's preliminary determinations of expert qualifications and the relevance and
reliability of the expert's testimony. Kraft, 77 S.W.3d at 807; Tamez, 100 S.W.3d
at 554.   I also note that we apply an abuse-of-discretion standard in reviewing
attorney disqualification motions. Metro. Life Ins. Co. v. Syntek Fin. Corp.,
881 S.W.2d 319, 321 (Tex. 1994). Specifically, this Court has reviewed under an
abuse-of-discretion standard an attorney disqualification motion that alleged the
sharing of confidential information between counsel for co-defendants. See Rio Hondo
Implement Co. v. Euresti, 903 S.W.2d 128, 132 (Tex. App.-Corpus Christi 1995,
orig. proceeding) ("We review the trial court's finding that confidential information was
or was not shared under an abuse of discretion standard."). Thus, only for purposes
of determining the standard of review to apply to Formosa's conflict-of-interest
challenge to Kajima's expert, I analogize to the standards associated with appellate
review of a trial court's ruling on an attorney disqualification motion. Accordingly, I
would hold that an abuse-of-discretion standard applies to our review of the trial
court's denial of Formosa's motion to strike Kajima's expert because of a disqualifying
conflict of interest. See Kraft, 77 S.W.3d at 807; see also Rio Hondo Implement Co.,
903 S.W.2d at 132. 

 Further, I already have determined, given the procedural posture of this case,
that the scope of appellate review of Formosa's challenge to the reliability of Kajima's
expert's opinions encompasses the record as a whole. I have found no authority
restricting the scope of review of Formosa's conflicted-expert issue. Accordingly, I
would also hold that Formosa's motion to strike Kajima's expert because of a
disqualifying conflict of interest encompasses the record as a whole, including
documents submitted to the trial court in camera. 

(3) The "Side-Switching" Facts


 In June of 1993, Huyghe called on Formosa and offered the services of AWH-C
to assist in Formosa's litigation with Kajima. Huyghe met with Formosa's in-house
counsel. Huyghe also met with Formosa's outside counsel. He confirmed the meeting
in a letter dated June 14, 1993 in which he referenced prior work AWH-C had
performed for Kajima: 

 As we briefly discussed, we have a working knowledge of Kajima and the
Japanese way of doing business as a result of our involvement in their
Fuji Photo Film Processing Plant project, among others for Japanese
clients over the past five years, and this could be advantageous should
negotiations occur.


 From June through December of 1993, Huyghe and other AWH-C employees
met with Formosa's outside counsel and reviewed, organized, and indexed more than
sixty boxes of documents produced by Kajima to Formosa in discovery. Formosa did
not seek any confidentiality or non-disclosure agreement with AWH-C before outside
counsel met with AWH-C staff or before they transmitted documents to Huyghe. The
lawyer who was the primary contact for Huyghe testified:

 [I]t wasn't so urgent for us to enter into a confidentiality agreement with
him. We've used him as an expert before. We certainly don't feel like
that he is green as far as knowing what goes on in these kinds of
situations. And, therefore, it just isn't-it wasn't necessary for us to
enter into a confidentiality agreement with him before we disclosed
confidential information.


 The law firm did not ask Huyghe to agree to maintain Formosa's confidentiality. 
Huyghe submitted bills totaling $22,350.11, including $8,493.50 for a proposed task
list, $7,549.50 for clerical indexing, and $6,307.11 in reimbursable expenses. (3)
Invoices detailing the work show a total of 13.5 hours for "discussion with
client/counsel" out of a total of 167.5 billed hours. On October 19, 1993, Huyghe
submitted a retention agreement for completion of the proposed task list to Formosa's
outside counsel. The retention agreement included a confidentiality and non-disclosure
clause: 

 All such services and the resultant work product shall remain privileged
and confidential and shall not be disclosed to any person or party except
as may be required to carry out and complete this project or as may be
compelled by any law, regulation, rule, order, ordinance, court or
administrative or legislative body of competent jurisdiction. Upon
completion of this project and payment in full to AWH of all of its fees
charged and expenses incurred in connection with this engagement, the
foregoing non-disclosure obligation shall terminate. 


 In a letter marked "Privileged and Confidential" and also dated October 19,
1993, Huyghe submitted a proposed budget estimate of $340,000.00 to
$400,000.00. The estimate expressly excluded "preparation for or the provision of
expert testimony." 

 Meanwhile, Formosa changed outside counsel in December of 1993. New
counsel met with Huyghe on December 3, 1993. Huyghe provided the new lawyers
a copy of the indices AWH-C had prepared of the Kajima documents. The expert
solicited retention on the remainder of the work, representing that Hutchison would
be available to testify as an expert. However, instead of retaining Huyghe, Formosa's
new counsel instructed Huyghe not to do any further work. By letter in April of 1994,
Formosa's new law firm confirmed with Huyghe that AWH-C's services were no longer
needed:

 After we spoke last week I visited with Ken Alexander about Hutchison's
role in the above referenced case. The net result is that you should
consider yourself indefinitely on "hold". 


 Although I would be happy to listen to your presentation if you are
ever in Houston, we do not need to use your services at this time. If and
when the circumstances change, I will contact you. 


The letter did not mention confidentiality or non-disclosure. On April 15, 1994,
Huyghe confirmed with Formosa's new counsel that the Formosa work was "on hold." 

 In August of 1994, Kajima's counsel approached Huyghe about consulting with
Kajima in this lawsuit. Huyghe informed Formosa's former counsel of the contact and
potential retention. Formosa's former counsel testified:

 He had called me and told me that he was-had been approached by
Kajima to represent or to be an expert for Kajima and did I think that that
was going to be a problem based on the amount of work that they had
done for us. And, I told him that I thought that it could be, that we were
no longer the attorney for Formosa, and that I would talk to the partners
in my firm, which I did. Mr. Huyghe and I had one other conversation
about it. He told me that the conversations that he had had with Kajima
had been very cursory, that they had just been approached by it, that he
thought they were talking to some other people, wasn't sure they'd even
be retained and there wasn't any sense in going in and kind of stirring up
the hornets' nest until he found out if they were going to be retained. I
told him that I thought he ought to contact [Formosa's new counsel],
because [they] were now their attorney, and he ought to find out
whether or not that was going to be a conflict. . . . I told him that I
thought he'd been too involved in this case and I probably said knew
some things that I thought it would make it difficult for him to represent
the other side. 


 There is no evidence in the record of any actions taken at that time by
Formosa's former counsel or by Formosa in response to Huyghe's disclosure of the
contact by Kajima. Huyghe did not contact Formosa's new counsel regarding Kajima's
approach. Nor did Formosa's new counsel contact Huyghe. 

 On August 9, 1994, Kajima's counsel sent a letter to Huyghe confirming their
initial discussions: 

 As we discussed, we want to be absolutely certain and
comfortable with the fact that there is no conflict of interest on your
part. Based on the facts that you described to me, I do not believe that
there would be. 


 As we also discussed, I would like you to be sure to review your
files and speak to all those involved in your preliminary discussions with
Formosa's prior counsel to make sure that there is nothing that would
remotely suggest the existence of conflict. 


 I am in the process of preparing a conflict certification for you to
sign which will basically certify that there is no conflict of interest, that
you have not received any confidential information from Formosa and
that you agree to keep all information provided to you by Kajima in
connection with this matter confidential. 


 The record also contains a "Conflict Certification," in affidavit form, dated
August 11, 1994 and signed by Huyghe as president of A. W. Hutchison &
Associates, Inc. In the "Conflict Certification," Huyghe attested: 

 I hereby certify that A. W. Hutchison & Associates, Inc. has not
received any confidential information from any Formosa entity or from its
counsel related in any manner to this litigation. 


The "Conflict Certification" further represented:


 I hereby further certify that A. W. Hutchison & Associates, Inc.
has not prepared any analysis of damages in this case for Formosa and
had not been hired by Formosa in this case to act as an expert witness. 


 In late September 1995, Kajima disclosed in discovery responses to Formosa
that it had hired Hutchison as an expert witness. On October 4, 1995, Formosa filed
its motion to strike the expert for "side-switching." At that time, Huyghe provided to
Kajima's counsel copies of letters and billings between AWH-C and Formosa's counsel. 
After a hearing, the trial court denied the motion to strike. 

(4) The Burden of Proof of Confidentiality and Non-Waiver


 Generally speaking, the party asserting that information disclosed to a third
party is protected by the attorney-client privilege has the burden of proving no waiver
occurred in communicating the information to the third party. See Jordan v. Fourth
Court of Appeals, 701 S.W.2d 644, 649 (Tex. 1985) (orig. proceeding). In the
context of expert disqualification based on "side-switching," courts in other
jurisdictions have held that the party seeking disqualification bears the burden
of establishing both the existence of confidentiality and its non-waiver. See, e.g.,
United States ex rel. Cherry Hill Convalescent Ctr., Inc. v. Healthcare Rehab Sys., Inc.,
994 F. Supp. 244, 249 (D. N.J. 1997); Cordy v. Sherwin-Williams Co.,
156 F.R.D. 575, 580 (D. N.J. 1994); English Feedlot, Inc. v. Norden Labs., Inc.,
833 F. Supp. 1498, 1501-02 (D. Colo. 1993). Accordingly, Formosa bears the burden
of establishing both the existence of confidentiality in its consultation with Huyghe and
its non-waiver of any confidentiality that attached to the information it conveyed to
the expert or to the expert's work product. See Jordan, 701 S.W.2d at 649. 

 Waiver occurs when a party either intentionally relinquishes a known right or
engages in intentional conduct inconsistent with claiming that right. See Tenneco, Inc.
v. Enter. Prod. Co., 925 S.W.2d 640, 643 (Tex. 1996); Sun Exploration & Prod. Co.
v. Benton, 728 S.W.2d 35, 37 (Tex. 1987). A party may expressly renounce a known
right and waive it. See Tenneco, Inc., 925 S.W.2d at 643. A party's silence or
inaction, for so long a period that it shows an intention to yield the known right, is also
enough to prove waiver. See id. I first determine if Formosa met its burden of proving
non-waiver. 

(5) Waiver Analysis


 Formosa had at least five opportunities to establish with Huyghe that AWH-C
and Huyghe were to maintain the confidentiality of any information acquired and work
product generated on Formosa's behalf. First, Formosa's in-house counsel could have
addressed the confidentiality issue when Huyghe initially solicited the consultation
from Formosa. In-house counsel did not. Second, Formosa's outside counsel could
have insisted on confidentiality when Huyghe met with Formosa's first set of lawyers. 
Outside counsel did not. This omission is particularly significant in light of Huyghe's
letter to outside counsel confirming that AWH-C had been involved in another Kajima
project to the extent that its "working knowledge of Kajima . . . could be
advantageous should negotiations occur." The solicitation letter evidences Formosa's
knowledge, throughout the course of this litigation, of a previous working relationship
between the expert and Kajima. Third, Formosa's counsel could have insisted on
confidentiality when they transmitted documents to Huyghe for analysis and when
they received the indices and other documents that comprised AWH-C's work product. 
Again, Formosa's initial outside counsel did not. Fourth, at the time Formosa's new
counsel declined any further services and instructed Huyghe to put the work "on hold,"
counsel could have instructed Huyghe that Formosa considered confidential all
information AWH-C and Huyghe had received and all work product generated on
Formosa's behalf. Formosa's new outside counsel did not. This omission is
particularly significant in light of Formosa's rejection of Huyghe's retention agreement,
which contained an express confidentiality and non-disclosure clause and, in fact,
provided that any duty of non-disclosure terminated when the consultation concluded. 
Finally, when Huyghe reported the initial contact by Kajima, Formosa or its counsel
could have objected specifically to any retention of Hutchison by Kajima and
unequivocally asserted the confidentiality of any information AWH-C received or work
product it generated. No one did. AWH went on to accept Kajima's retention and
ultimately performed thousands of hours of work and billed almost a million dollars in
consulting fees in this litigation. 

 I note that some cases that address the "side-switching" of experts suggest an
obligation on the part of the expert to "take care to avoid conduct that contributes to
a lack of clarity about the relationship." See, e.g., Wang Labs., Inc., v. Toshiba Corp.,
762 F. Supp. 1246, 1250 (E.D. Va. 1991). Nonetheless, as noted by one of the
cases relied on by Formosa, the primary burden remains with the attorney to establish
a reasonable basis for concluding that the expert understood the confidential nature
of the relationship. Paul v. Rawlings Sporting Goods Co., 123 F.R.D. 271, 279 (S.D.
Ohio 1988). The Paul court reasoned: 

 Of the two participants in an attorney-expert relationship. . . , the
attorney, being an expert in legal matters, should be more aware both of
the potential for privileged information to pass to the expert, and for the
need to insure [sic] against such information finding its way into the
hands of an adversary. Consequently, [it is not] unfair to place the
burden of making sure that the expert understands the type of
relationship which exists, and the need to keep information disclosed
during the course of that relationship confidential, on the attorney in the
first instance. Id. 

 Further, Formosa does not dispute that it provided the document indices created
by AWH-C to its testifying expert. The facts known to an expert and underlying the
expert's mental impressions and opinions related to a case are discoverable "regardless
of when and how the factual information was acquired." Tex. R. Civ. P. 192.3(e)(3);
see Aetna Cas. & Sur. Co. v. Blackmon, 810 S.W.2d 438, 440 (Tex. App.-Corpus
Christi 1991, orig. proceeding) (holding that designation of party employee as
testifying expert waived attorney-client, work product, and party communication
privileges as to the privileged information the expert relied on in forming mental
impressions and opinions related to case). 

 Accordingly, I would hold that Formosa has not met its burden of proving non-waiver of its claim of confidentiality over the information it provided to and the work
product created by Huyghe and AWH-C. See Jordan, 701 S.W.2d at 649; see also
Mitchell v. Wilmore, 981 P.2d 172, 176 (Colo. 1999) (citations omitted) ("The
discussion of mere technical information about a case does not meet a party's burden
under this framework. Nor is disqualification [of an expert] appropriate where the
confidentiality of the information has been legally waived or if the information claimed
to be confidential is actually routinely discoverable."). 

 I would overrule the first part of Formosa's third issue. Having found that
Formosa did not meet its burden of proving non-waiver, I would not address whether
the information provided by Formosa to Huyghe was confidential or whether Huyghe
actually or conclusively is presumed to have shared confidential information with
Hutchison. (4) See Tex. R. App. P. 47.4. 

2. Evidence of Mitigation


a. The Issue on Appeal


 In its fifth issue, Formosa asserts that the trial court erred in excluding evidence
that Kajima, not Formosa, caused much of its own losses. Formosa relies on Arthur
Anderson & Co. v. Perry Equip. Corp., 945 S.W.2d 812, 817 (Tex. 1997):

We emphasize that a plaintiff's recovery of damages is limited not only
by his own evidence, but also by the defendant's evidence of the
plaintiff's failure to reasonably mitigate losses or evidence of intervening
causes. If a plaintiff's losses are attributable to his own mistakes or
factors outside either of the parties' control, the defendant may be
entitled to an appropriate limiting instruction to the jury. 


Id. (citations omitted). Formosa contends that it properly pleaded the defense of
mitigation, but the trial court refused, over Formosa's objection, to permit development
of evidence of Kajima's "self-inflicted" losses to the jury. Formosa argues that the trial
court repeatedly prohibited it from examining witnesses about Kajima's bid omissions
and other mitigating causes that inflated Kajima's damages. Specifically, Formosa
attempted at trial to cross-examine Hutchison about how he accounted for Kajima's
bid omissions when he prepared his damages calculations. However, the trial court
sustained Kajima's objections to the questions because the court agreed that the bid
omissions were irrelevant to the reasonable value of Kajima's work. See Formosa
Plastics Corp. USA v. Presidio Eng'rs & Contrs., 960 S.W.2d 41, 49-50 (Tex. 1998). 

 Kajima argues that the trial court concluded that mitigation evidence was not
relevant after Kajima nonsuited its contract claims. The proper fraud measure of
damages, Kajima maintains, is out-of-pocket loss, or the difference between the
reasonable value of the work Kajima performed and what it received. Bid omissions
do not factor into the fraud measure of damages, Kajima concludes. 

 Formosa also contends that the trial court abused its discretion in excluding
testimony of other causes of Kajima's losses, such as mismanagement, overcharges,
and theft by Kajima personnel. Kajima responds that the party who caused a loss
bears the burden of proving lack of diligence on the part of the plaintiff as well as the
amount by which the damages were increased by the failure to mitigate. See Lester
v. Logan, 893 S.W.2d 570, 577 (Tex. App.-Corpus Christi 1994, writ denied). 
Kajima argues that Formosa does not in its brief cite to any evidence showing an
increase in the amount of damages created by Kajima's failure to mitigate. 

b. The Evidentiary Standard of Review


 The trial court determines preliminary questions about admitting or excluding
evidence. Tex. R. Evid. 104(a). Whether to admit or exclude evidence is a matter
committed to the trial court's sound discretion. State v. Bristol Hotel Asset Co.,
65 S.W.3d 638, 647 (Tex. 2001). A trial court abuses its discretion when it acts
without regard to any guiding rules or principles. Id. (citing Downer v. Aquamarine
Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985)). 

c. Mitigation Analysis

(1) Evidence of Bid Omissions


 In support for its position that bid omissions were not relevant to the fraud
measure of damages, Kajima cites Presidio, which held: 

 [T]he out-of-pocket measure only compensates for actual injuries a party
sustains through parting with something, not loss of profits on a bid not
made, and a profit never realized, in a hypothetical bargain never struck.
Thus, the $1.3 million hypothetical bid less the $600,000 actually
received is not probative of Presidio's out-of-pocket loss. The proper
out-of-pocket calculation of damages, based on Burnette's testimony,
was $831,000 less the amount he actually received, $600,000, for
damages of $231,000. 


Presidio, 960 S.W.2d at 49-50 (footnote omitted). Applying Presidio's logic to the
facts of this case, I would hold that the trial court did not abuse its discretion in
excluding evidence of Kajima's bid omissions. See id.

(2) Other Evidence of Mitigation


 To preserve an error related to exclusion of the testimony of a witness, a party
must offer proof or a formal bill of exceptions. Tex. R. App. P. 33.2; Tex. R.
Evid. 103(a)(2). In that offer or bill, the party must specify what the proffered witness
would testify to if allowed to testify. Tex. R. Evid. 103(a)(2). Only by such measures
may the failure to allow testimony be preserved. Fletcher v. Minn. Mining & Mfg. Co.,
57 S.W.3d 602, 606-07 (Tex. App.-Houston [1st Dist.] 2001, pet. denied). In this
case, Formosa submitted offers of proof of the testimony of a number of witnesses. 
However, Formosa does not cite in its briefs to any record in its offers of proof where
it developed evidence of damages. See Tex. R. App. P. 38.1(h). Having examined
each of the offers of proof and finding no evidence of the amount by which Formosa
claims Kajima increased its own damages, I would hold that Formosa did not preserve
error over its challenge to the trial court's exclusion of testimony of other causes of
Kajima's damages. See Fletcher, 57 S.W.3d at 606-07. Accordingly, I would overrule
Formosa's fifth issue. See Rivas v. Cantu, 37 S.W.3d 101, 118 (Tex. App.-Corpus
Christi 2000, pet. denied) (noting that "out-of-pocket measure computes the difference
between the value paid and the value received"); see also Duperier v. Tex. State Bank,
28 S.W.3d 740, 754 (Tex. App.-Corpus Christi 2000, pet. dism'd by agmt.)
(noting that "injured party in a fraud case has no duty to minimize damages resulting
from the fraud" in holding that mitigation is no defense to violation of Texas Securities
Act). 

 I turn to Formosa's challenge to the trial court's partial summary judgment on
single-business-enterprise grounds. 

B. Single-Business-Enterprise Partial Summary Judgment


1. The Issue on Appeal


 In the first part of issue seven, Formosa asserts that the trial court's granting
of Kajima's traditional motion for summary judgment that Formosa USA and Formosa
Texas operated as a single business enterprise was error. Formosa contends that
actual fraud is required for a finding of a single business enterprise. See Tex. Bus.
Corp. Act Ann. art. 2.21(A)(2) (Vernon 2003) (prohibiting imposition of liability on
corporate affiliate in absence of showing that affiliate caused corporation to be used
for purpose of perpetuating and did perpetuate actual fraud primarily for direct personal
benefit of affiliate). Formosa argues that Kajima did not submit summary-judgment
evidence that Formosa USA and Formosa Texas engaged in a single business
enterprise to perpetrate fraud. Kajima responds that proof of fraud is not required to
recover on a single-business-enterprise finding. See N. Am. Van Lines, Inc. v.
Emmons, 50 S.W.3d 103, 119 (Tex. App.-Beaumont 2001, pet. denied). 

 Formosa also asserts that whether a single business enterprise exists presents
a fact issue for the jury. See Castleberry v. Branscum, 721 S.W.2d 270, 277 (Tex.
1986). Kajima responds that the trial court properly determined the single-business-enterprise issue as a matter of law. See Allright Tex., Inc. v. Simons,
501 S.W.2d 145, 150 (Tex. Civ. App.-Houston [1st Dist.] 1973, writ ref'd n.r.e.); see
also Murphy Bros. Chevrolet Co. v. E. Oakland Auto Auction, 437 S.W.2d 272, 276
(Tex. Civ. App.-El Paso 1969, writ ref'd n.r.e.). 

 Formosa further contends that its summary-judgment evidence raised a material
fact issue as to whether Formosa USA and Formosa Texas operated as a single
business enterprise. Kajima counters that Formosa's summary-judgment evidence did
not raise any issue of material fact, arguing that the only summary-judgment evidence
Formosa submitted did not identify any relevant time period. 

2. The Summary-Judgment Standard of Review


 The standard of review for the grant of a motion for summary judgment
is determined by whether the motion was brought on no-evidence or traditional
grounds. See Tex. R. Civ. P. 166a(i), (c); see also Ortega v. City Nat'l Bank,
97 S.W.3d 765, 771 (Tex. App.-Corpus Christi 2003, no pet.) (op. on reh'g). We
review de novo a trial court's grant or denial of a traditional motion for summary
judgment. Ortega, 97 S.W.3d at 772. The movant bears the burden of showing both
no genuine issue of material fact and entitlement to judgment as a matter of law. See 
Tex. R. Civ. P. 166a(c); see also Ortega, 97 S.W.3d at 771. In deciding whether there
is a genuine issue of material fact, we take evidence favorable to the non-movant as
true. Ortega, 97 S.W.3d at 771. We make all reasonable inferences and resolve all
doubts in favor of the non-movant. Id. 

3. The Summary-Judgment Evidence


 Kajima presented summary-judgment evidence that agents of Formosa USA
represented to Kajima that Formosa USA owned the Point Comfort facility. Kajima
also presented summary-judgment evidence that Formosa Texas is the owner of record
of the facility, even though it had no authority over the construction of its plant. Other
summary-judgment evidence showed that Formosa Texas had no power to approve
construction change orders in excess of $5,000.00. A change order in excess of
$50,000.00 had to be approved by Formosa USA's executive vice-president, Susan
Wang, who also was Formosa Texas's executive vice-president. All change orders
more than $5,000.00 but less than $50,000.00 had to be approved by Formosa
USA's assistant vice president, L.F. Pan. Kajima also presented summary-judgment
evidence that Glenn Dobbs, an employee of Formosa Texas, performed bid analyses
for Formosa USA on the Point Comfort construction project. Other evidence
established that the principal place of business for Formosa USA during the contract
negotiation and construction phases of the Point Comfort project was 9 Peach Tree
Hill Road, Livingston, New Jersey 07039, which also was Formosa Texas's designated
principal office address during that time. Also during the contract negotiation and
construction phases of the Point Comfort project, Robert Hsueh and Simon Chang,
both employees of Formosa Texas, reported to L.F. Pan, employed by Formosa USA. 
The director of legal services for Formosa Texas, Camp Mehrens, reported to Jack Wu,
an officer of both Formosa Texas and Formosa USA. Another employee, Jack Huang,
testified he was not sure if he worked for Formosa USA or Formosa Texas on the Point
Comfort project. Yet another employee, Jeff Tseng, testified he did not understand
the differences between Formosa USA and Formosa Texas. 

 As its summary-judgment proof, Formosa presented a two-page affidavit that
identified the affiant, Alice Nightingale, as the corporate secretary for Formosa USA
and Formosa Texas since January 10, 1992. Nightingale's affidavit is dated
December 11, 2001. Nightingale stated that Formosa Texas and Formosa USA:
(1) have separate principal business addresses, (2) have separate telephone numbers,
(3) file separate state franchise tax returns, (4) contract for purchases and sales
separately, and (5) maintain separate real property ownership. The affidavit does not
recite that the facts were true and correct during the contract negotiation and
construction phases of the Point Comfort project. 

4. The Law of Single Business Enterprise


 Separate corporations operate as a single business enterprise when they
do not operate as separate entities but rather integrate their resources to
achieve a common business purpose. Paramount Petroleum Corp. v. Taylor Rental
Ctr., 712 S.W.2d 534, 536 (Tex. App.-Houston [14th Dist.] 1986, writ ref'd n.r.e.);
see also Gardemal v. Westin Hotel Co., 186 F.3d 588, 594 (5th Cir. 1999). Each
constituent corporation may be held responsible for the liabilities of the other if they
operate as a single business enterprise. Paramount Petroleum Corp., 712 S.W.2d
at 536; Gardemal, 186 F.3d at 594. Elements relevant to a finding of a single
business enterprise include: (1) common employees, (2) common offices,
(3) centralized accounting, (4) payment of wages by one corporation to another
corporation's employees, (5) common business name, (6) services rendered by
employees of one corporation on behalf of another corporation, (7) undocumented
transfers of funds between corporations, and (8) unclear allocation of profits and
losses between corporations. Bridgestone Corp. v. Lopez, 131 S.W.3d 670, 682
(Tex. App.-Corpus Christi 2004, pet. filed) (citing El Puerto de Liverpool v. Servi
Mundo Llantero S.A. de C.V., 82 S.W.3d 622, 637 (Tex. App.-Corpus Christi 2002,
pet. dism'd w.o.j.) (op. on reh'g); Paramount Petroleum Corp., 712 S.W.2d at 536.). 

5. Analysis of Single-Business-Enterprise Partial Summary Judgment


 Proof of fraud as a separate element is not required to recover on a single-business-enterprise finding. "To recover under a finding of a single business
enterprise, no proof of fraud is required; instead, the single business enterprise theory
relies on equity analogies to partnership principles of liability." Bridgestone Corp., 131
S.W.3d at 682 (quoting Emmons, 50 S.W.3d at 119). The record supports Kajima's
argument that the summary-judgment evidence it presented conclusively established
as a matter of law that Formosa USA and Formosa Texas integrated their resources
to achieve the common business purpose of completing the Point Comfort construction
project. Kajima's summary-judgment evidence showed that during the contract
negotiation and construction phases of the Point Comfort project: (1) Formosa USA
and Formosa Texas had common employees; (2) Formosa USA and Formosa Texas
had common offices; (3) the two corporations shared "Formosa" in their respective
corporate names; (4) employees of one corporation rendered services for the other
corporation; and (5) the two corporations had merged accounting functions to the
extent they related to approval of construction change orders with regard to the
project. See Bridgestone Corp., 131 S.W.3d at 682. 

 On the other hand, Formosa's summary-judgment evidence only provided
evidence of the relationship between the two corporations on the date of the affidavit
in 2001, not during the contract negotiation and construction phases of the project
from 1991 through 1993. I note that the affidavit identifies Nightingale as an
employee of both corporations, lending support to Kajima's position. Further, the
affidavit establishes that Nightingale's tenure as a corporate secretary for the
corporations did not begin until January 10, 1992, after the contract negotiation phase
of the Point Comfort project began. Thus, Nightingale's affidavit did not raise any fact
issue to controvert the commonalities between the two corporations during the
contract negotiation and construction phases of the Point Comfort project shown by
Kajima's summary-judgment evidence. 

 Accordingly, taking the summary-judgment evidence favorable to Formosa as
true and making all reasonable inferences and resolving all doubts in Formosa's favor,
I would hold that Kajima met its burden of showing both no genuine issue of material
fact and entitlement to partial judgment as a matter of law on the issue of single
business enterprise. See Tex. R. Civ. P. 166a(c); see also Ortega, 97 S.W.3d at 772. 
Thus, I would overrule the first part of issue seven. 

C. The Jury Charge


1. The Alleged Charge Error


 In a subissue within issue six, Formosa claims that the trial court abused its
discretion in not instructing the jury on mitigation. Within issue seven, Formosa
asserts that the trial court abused its discretion in instructing the jury that Formosa
USA and Formosa Texas operated as a single business enterprise. Formosa also
contends, in issue four, that the trial court abused its discretion in not charging the
jury on ratification. In issue two, Formosa challenges the trial court's submission of
a single broad-form fraud liability question rather than submission of a fraud liability
question that required a jury finding as to each of the five contracts. 

2. Charge Error Standard of Review


 The standard of review for error in a jury charge is abuse of discretion. 
In re V.L.K., 24 S.W.3d 338, 341 (Tex. 2000); R & R Contrs. v. Torres,
88 S.W.3d 685, 696 (Tex. App.-Corpus Christi 2002, pet. dism'd). We accord the
trial court broad discretion so long as the charge is legally correct. Hyundai Motor Co.
v. Rodriguez, 995 S.W.2d 661, 664 (Tex. 1999). If a party timely raises a proper
request that a matter be included in the jury charge, we cannot permit a judgment to
stand when the trial court refuses to submit a valid theory of recovery or a vital
defensive issue that the pleadings and evidence fairly present. Exxon Corp. v. Perry,
842 S.W.2d 629, 631 (Tex. 1992) (per curiam). 

 3. Instructions


 When the trial court refuses to submit a requested instruction, the question on
appeal is whether the requested instruction was reasonably necessary to enable the
jury to reach a proper verdict. R & R Contrs., 88 S.W.3d at 696 (citing Tex. Workers'
Comp. Ins. Fund v. Mandlbauer, 34 S.W.3d 909, 912 (Tex. 2000) (per curiam)); see
Tex. R. Civ. P. 277. A trial court has considerably more discretion in submitting
instructions and definitions than it has in submitting questions. Ed Rachal Found. v.
D'Unger, 117 S.W.3d 348, 364 (Tex. App.-Corpus Christi 2003, pet. filed) (en banc)
(citing Harris v. Harris, 765 S.W.2d 798, 801(Tex. App.-Houston [14th Dist.] 1989,
writ denied)). 

a. Mitigation

 I already have concluded that the trial court did not abuse its discretion in
excluding evidence of Kajima's bid omissions as not relevant to Kajima's fraud claim. 
I also have concluded that Formosa did not preserve error by bill of exception or offer
of proof of any increase in the amount of damages it contended Kajima caused by
mismanagement, overcharges, theft, or other mitigating factors. I find that the
evidence did not support submission of a mitigation instruction. See Elbaor v. Smith,
845 S.W.2d 240, 243 (Tex. 1992) (holding that trial court may refuse to submit jury
question if no evidence warrants its submission). Formosa suggests that Hutchison's
expert testimony that Kajima expended $3,330,547.00 in costs that did not add value
to the project supported submission of a mitigation instruction. However, the amount
of costs Kajima expended that did not add value to the project was a factor Hutchison
took into account in calculating the reasonable value of the work Kajima performed. 
I conclude that a mitigation instruction was not reasonably necessary to enable the
jury to reach a proper verdict. See R & R Contrs., 88 S.W.3d at 696. Accordingly,
I would hold that the trial court did not abuse its discretion in refusing to instruct the
jury on mitigation. See id. Thus, I would overrule Formosa's fourth issue. 

b. Single Business Enterprise 


 An explanatory instruction is improper only if it is a misstatement of the law as
applicable to the facts. D'Unger, 117 S.W.3d at 364. I already have concluded that
Kajima met its burden of showing both no genuine issue of material fact and
entitlement to partial judgment as a matter of law on the issue of single business
enterprise. Thus, a single-business-enterprise instruction was reasonably necessary
to enable the jury to reach a proper verdict. See R & R Contrs., 88 S.W.3d at 696. 
Accordingly, I would hold that the trial court did not abuse its discretion in instructing
the jury to consider Formosa Texas and Formosa USA as a single business enterprise. 
See id. Thus, I would overrule the second part of issue seven. 

4. Jury Questions


a. Ratification


 Formosa contends it timely submitted a proper ratification jury question that
instructed that ratification occurs when a defrauded party: (1) continues to accept
benefits under the contract after it became aware of the fraud or recognizes the
contract is binding, (2) with full knowledge of the fraudulent act at the time of the
ratification, and (3) intends to ratify the contract in spite of the fraud. See Fortune
Prod. Co. v. Conoco, Inc., 52 S.W.3d 671, 676 n.1 (Tex. 2000). Formosa argues that
the evidence showed that Kajima recognized in March 1992 that it would lose
$25 million unless it cancelled the contracts and walked off the job. Kajima's decision
to go forward even though it knew that it would cost $25 million to complete the
contracts, Formosa argues, evidences Kajima's acknowledgment of the alleged fraud
and constitutes ratification. Kajima responds that Formosa had the burden to produce
evidence that Kajima acted with full knowledge of the fraud and of all material facts
to entitle it to any ratification instruction. Formosa produced no such evidence, Kajima
argues, because of the ongoing nature of the "string-along" fraud perpetrated by
Formosa, that is, its post-contract assurances of payment for overages as inducement
for continued performance. Accordingly, Kajima concludes, Formosa was not entitled
to a ratification question. Kajima also asserts that Formosa's ratification question was
not in the substantially correct form because it did not allow the jury to consider
Formosa's post-contract fraud. Rather, Kajima argues, as submitted Formosa's
ratification question invited the trial court to commit the same charge error we
reversed and remanded for a new trial in Kajima I. See Kajima I, 15 S.W.3d at 291. 

 No general rule guides the analysis of what acts of ratification will or will not
waive fraud in the inducement. Fortune Prod. Co., 52 S.W.3d at 678-79 (and cited
authorities). I first note that the supreme court held in Fortune Prod. Co. that only the
plaintiffs who continued to perform after the fraudulently induced contracts expired
were precluded from recovering damages for the fraud. Id. at 680. On the other
hand, the supreme court permitted recovery of fraud damages by those plaintiffs who
continued to perform binding contracts for a stated term after they learned of the fraud
that induced those contracts. Id. at 679. I conclude that ratification of fraud occurs
if "the fraud no longer induce[s] the performance." Id. at 680. The burden was on
Formosa to prove that Kajima had full knowledge of the ongoing fraud and made a
voluntary, intentional choice to ratify the transactions in light of that knowledge. See
Arroyo Shrimp Farm v. Hung Shrimp Farm, 927 S.W.2d 146, 153 (Tex. App.-Corpus
Christi 1996, no writ). I find that Formosa introduced no evidence of a point at which
its fraud no longer induced Kajima's performance so as to support submission of a
ratification question. See Elbaor, 845 S.W.2d at 243. I would hold that the trial court
did not abuse its discretion in refusing to charge the jury on ratification. See R & R
Contrs., 88 S.W.3d at 696. I would overrule Formosa's fourth issue. 

b. Broad-Form Fraud Question


 In issue two, Formosa challenges the trial court's submission of a single broad-form fraud liability question rather than submission of a fraud liability question that
required a jury finding as to each of the five contracts. (5) Formosa argues that the
broad-form submission made it impossible for Formosa to challenge the legal or
factual sufficiency of the evidence to support the jury's damages finding since the
damages finding cannot be traced to any one contract. See Crown Life Ins. Co. v.
Casteel, 22 S.W.3d 378, 389 (Tex. 2000) ("When a single broad-form liability
question erroneously commingles valid and invalid liability theories and the appellant's
objection is timely and specific, the error is harmful when it cannot be determined
whether the improperly submitted theories formed the sole basis for the jury's
finding."). Kajima responds that Casteel only prohibits the broad-form submission of
separate theories of liability, not broad-form submission of only one theory of liability,
in this case fraud. See id. Kajima also points out that the "law of the case"
established by Kajima I mandated the broad-form submission. See Kajima I, 15 S.W.3d
at 291. Formosa counters that our prior holding only required submission on remand
of a jury question that permitted the jury to consider post-contract fraud as well as
fraud in the inducement, not submission of a broad-form fraud liability question that
did not differentiate between the contracts. However, our prior holding required the
trial court to submit a broad-form fraud question that permitted the jury to take
Formosa's post-contract fraud into account. See id. I would hold that the trial court
did not abuse its discretion in refusing Formosa's submitted fraud question that
required a liability finding as to each separate contract. See R & R Contrs.,
88 S.W.3d at 696. I would overrule Formosa's second issue. 

D. Sufficiency of the Evidence of Damages


 In the second part of issue three, Formosa claims that Hutchison's opinions
constitute no evidence of damages. Similarly, Formosa asserts as a subissue of
issue six that Kajima's out-of-pocket losses could not have exceeded half of the
amount the jury found. Focusing on the admittedly striking numerical sequence in the
jury's damages finding of $15,432,123.45, Formosa asserts in issue one that the
evidence is legally and factually insufficient to support the jury's award of fraud
damages. 

1. Sufficiency Standards and Scope of Review


 Under a proper measure-of-damages instruction, a fact finder has the discretion
to find damages within the range of evidence presented at trial. See Gulf States Utils.
Co. v. Low, 79 S.W.3d 561, 566 (Tex. 2002). When an appellant challenges the legal
sufficiency of a damages award, we consider only the evidence and inferences that
support the fact finder's damages finding. See D'Unger, 117 S.W.3d at 354. We
disregard all evidence and inferences to the contrary. Id. The appellant must show
that the record presents no probative evidence to support the adverse finding. 
Croucher v. Croucher, 660 S.W.2d 55, 58 (Tex. 1983). The evidence is no more than
a scintilla and, in legal effect, is no evidence "when the evidence offered to prove a
vital fact is so weak as to do no more than create a mere surmise or suspicion of its
existence." Kindred v. Con/Chem., Inc., 650 S.W.2d 61, 63 (Tex. 1983). 
Conversely, more than a scintilla exists when the evidence "rises to a level that would
enable reasonable and fair-minded people to differ in their conclusions." Transp. Ins.
Co. v. Moriel, 879 S.W.2d 10, 25 (Tex. 1994). 

 Unlike legal-sufficiency challenges, factual-sufficiency issues concede that the
record presents conflicting evidence on an issue. Raw Hide Oil & Gas, Inc. v. Maxus
Exploration Co., 766 S.W.2d 264, 275 (Tex. App.-Amarillo 1988, writ denied). Like
legal-sufficiency challenges, the standard of review on factual-sufficiency issues
depends on the burden of proof at trial. Id. at 275. The party attacking a finding
on which an adverse party bore the burden of proof must show that the
record presents "insufficient evidence" to support the finding. Gooch v. Am. Sling
Co., 902 S.W.2d 181, 184 (Tex. App.-Fort Worth 1995, no writ). In reviewing an
insufficient-evidence issue, we examine and consider all of the evidence, not just the
evidence that supports the verdict, to see whether it supports or undermines the
finding. Maritime Overseas Corp. v. Ellis, 971 S.W.2d 402, 406-07 (Tex. 1998). We
set aside the finding for factual insufficiency if the "evidence adduced to support the
vital fact, even if it is the only evidence adduced on an issue, is factually too weak
alone to support it." See Ritchey v. Crawford, 734 S.W.2d 85, 86-87 n.1 (Tex. App.-
Houston [1st Dist.] 1987, no writ) (quoting Robert W. Calvert, "No Evidence" and
"Insufficient Evidence" Points of Error, 38 Tex. L. Rev. 361, 366 (1960)). 

2. Damages Sufficiency Analysis


 I have already determined that the trial court properly admitted Hutchison's
expert testimony as to Kajima's fraud damages. Hutchison testified that Kajima
expended $38,717,854.00 in total costs in completing the project. He also testified
Kajima expended $3,330,547.00 in costs that did not add value to the project. 
Formosa paid Kajima approximately $10,000,000.00 on the project. Hutchison
concluded that Kajima's out-of-pocket damages equaled $25,387,380.00. This out-of-pocket damages calculation complies with the supreme court's measure-of-damages
analysis in Presidio. See Presidio, 960 S.W.2d at 49. After observing all the evidence
presented at trial and being charged on the proper measure of damages, the jury
determined Kajima suffered $15,432,123.45 in damages. 

 I find more than a scintilla of evidence to support the jury's damages finding.
See Moriel, 879 S.W.2d at 25; see also Kindred, 650 S.W.2d at 63. I do not find the
evidence to be factually too weak to support the jury's damages finding. See Ritchey,
734 S.W.2d at 86-87 n.1. The jury's damages finding was within the range of
evidence presented at trial and within the jury's discretion. See Gulf States Utils. Co.,
79 S.W.3d at 566. I would hold the evidence legally and factually sufficient to support
a jury award of $15,432,123.45. See id. Thus, I would overrule Formosa's first
issue, the second part of its third issue, and the second part of its sixth issue. 

E. Jury Examination of Documentary Evidence


 In issue eight, Formosa challenges the trial court's refusal to permit examination
by the jury of plans and specifications entered into evidence. Rule 281 of the Texas
Rules of Civil Procedure sets out that the jury "may, and on request shall, take
with them in their retirement . . . any written evidence . . . . Where part only of a
paper has been read in evidence, the jury shall not take the same with them,
unless the part so read to them is detached from that which is excluded." Tex. R.
Civ. P. 281. Rule 281 is mandatory. First Employees Ins. Co. v. Skinner,
646 S.W.2d 170, 172 (Tex. 1983). The trial court is required to send all exhibits
admitted into evidence to the jury room during the deliberations. Id. The rule is self-operative and requires no request from the jurors or counsel. Id. 

 If the drawings described by Formosa were admitted into evidence, the trial
court, by refusing to submit the drawings to the jury during deliberations, would have
acted without reference to guiding rules and principles by ignoring rule 281. This
would be an abuse of discretion. See Downer, 701 S.W.2d at 241-42. However,
Formosa does not establish on appeal that the exhibit containing the drawings was
admitted into evidence. Formosa cites only to the volumes of the appellate record that
include the drawings, not to any portion of the record showing the admission of those
drawings into evidence. Further, even if the trial court initially admitted the drawings
into evidence pursuant to the parties' rule 11 agreement, it later ruled that the post-contract drawings comprising part of the evidence were irrelevant and inadmissable. 
Thus, the trial court expressly withdrew post-contract drawings from evidence, but
exactly which drawings is not clear from the record. Formosa does not complain of
the trial court's evidentiary ruling, only that the trial court did not send the documents
into the jury room during deliberations. Formosa cannot contend now that any pre-contract drawings were erroneously withheld from the deliberating jury as a result of
the trial court's ruling on the post-contract drawings. Formosa, the party offering the
evidence, had the burden of excising the inadmissable portions from the evidence so
that the admissible portion could be submitted to the jury. See Am. Gen. Fire &
Casualty Co. v. McInnis Book Store, 860 S.W.2d 484, 488 (Tex. App.-Corpus
Christi 1993, no pet.). "The objecting party . . . must provide a reviewing court with
a record that shows that the objectionable portion of the evidence was clearly
identified either in the objection or in the ruling of the trial court." Id. Formosa does
not do so, nor has it provided specific citation in the record to the post-contract
documents to which its issue on appeal applies. I would hold that Formosa waived
on appeal its complaint that the trial court did not comply with rule 281. See Tex. R.
App. P. 38.1(h). Thus, I would decline to address Formosa's eighth issue. 

F. Prejudgment Interest


 Finally, Formosa claims in issue nine that the judgment awarded Kajima
excessive prejudgment interest. In its appellant's brief, Formosa asserts that
section 304.105 of the Texas Finance Code applies to Kajima's fraud claim through
the supreme court's holding that specific provisions of chapter 304 apply to certain
common-law cases. See Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.,
962 S.W.2d 507, 531-32 (Tex. 1998); see also Tex. Fin. Code Ann. § 304.105(a)
(Vernon Supp. 2004) ("If judgment for a claimant is more than the amount of a
settlement offer of the defendant, prejudgment interest does not accrue on the amount
of the settlement offer during the period the offer may be accepted."). Formosa has
not cited any authority that applies chapter 304 to fraud claims, and I have found
none. I would decline Formosa's invitation to extend Johnson & Higgins to fraud
claims. Thus, I would overrule Formosa's ninth issue. (6)

III. CONCLUSION


 I would affirm the judgment of the trial court. 

 ERRLINDA CASTILLO

 Justice


Concurring opinion delivered and filed

this 28th day of December, 2006. 

 
1. For a more detailed discussion of the relevant facts, see this Court's opinion in Kajima Int'l v.
Formosa Plastics Corp., 15 S.W.3d 289, 291 (Tex. App.-Corpus Christi 2000, pet. denied). 
2. We ordered the record of the 1997 trial included within the record of this appeal along with
the record of the 2002 trial. 
3. The letterhead on the invoices shows "A.W. Hutchison & Associates, Inc." at an Atlanta,
Georgia address. Payment documentation in the record includes a check from Formosa made payable
to "A.W. Hutchison, Inc." for $20,875.89. 
4. My conclusion that the abuse-of-discretion standard of review applicable to attorney
disqualification proceedings also applies to expert disqualification should not be read as adopting
attorney conflict-of-interest standards to experts. 
5. Kajima argues that Formosa's oral on-the-record objections after the charge conference did not
specify this particular objection. The record indicates that Formosa, after dictating oral objections, also
confirmed on the record that the trial court had refused all of its requested issues and instructions. The
clerk's record reflects that the trial court refused a written fraud liability issue submitted by Formosa that
requested a separate finding as to each contract. 
6. In its reply brief, Formosa raises for the first time as a subissue within issue nine that
amendments adopted in 2003 to pre-judgment interest rates in Texas apply to this appeal. The briefing
rules do not allow an appellant to include in a reply brief an issue not raised in appellant's original brief. 
Tex. R. App. P. 38.3; see In re A.M., 101 S.W.3d 480, 486 (Tex. App.-Corpus Christi 2002, orig.
proceeding) (citing Anderson Producing, Inc. v. Koch Oil Co., 929 S.W.2d 416, 424 (Tex. 1996);
Barrios v. State, 27 S.W.3d 313, 322 (Tex. App.-Houston [1st Dist.] 2000, pet. ref'd)). Formosa did
not seek leave to raise the new issue. I do not address Formosa's improperly raised issue. See In re
A.M., 101 S.W.3d at 486.